This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                No. 34,274

**ROBERTO RODRIGUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sarah C. Backus, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Defendant Roberto Rodriguez appeals from an order of conditional discharge and probationary supervision, entered after a jury found him guilty of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011). Defendant argues that: (1) the district court erred in denying his motions to suppress evidence, (2) the evidence was insufficient to support the guilty verdict for possession of a controlled substance, (3) the district court erred in denying his motion to dismiss the case, and (4) he was denied his right to a speedy trial. For the following reasons, we affirm.

## I.     BACKGROUND

{2}     On September 30, 2010, New Mexico State Police officers went to Defendant's residence. Sergeant Lorenzo Aguirre and Lieutenant Eduardo Martinez knocked on the door of the residence and spoke with Defendant, who invited them in. According to Sergeant Aguirre and Lieutenant Martinez, Defendant consented to a search of his residence for narcotics. Inside Defendant's residence officers discovered what they believed to be cocaine.

{3}     Defendant was arrested and charged with possessing cocaine with the intent to distribute it, possession of cocaine, and possession of drug paraphernalia. After a jury trial, Defendant was convicted of possession of cocaine. Because this is a memorandum opinion and the parties are familiar with the facts and procedural

background, we reserve further discussion of the pertinent facts within the context of Defendant's arguments.

## II.  DISCUSSION

## A.  Defendant's Motions to Suppress Evidence

{4}     "In reviewing a trial court's denial of a motion to suppress, [appellate courts] observe the distinction between factual determinations[,] which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo review." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (alteration, internal quotation marks, and citation omitted). "[Appellate courts] view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

## 1.  Defendant Voluntarily Consented to the Warrantless Search of His Residence

{5}     Defendant argues that the district court erred in denying his motion to suppress the evidence seized from his residence. Defendant challenges the district court's determination that he voluntarily consented to the warrantless search. We are not persuaded.

{6}     Warrantless searches are presumed to be unconstitutional under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New

3

Mexico Constitution. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions." (emphasis, internal quotation marks, and citation omitted)). The state has the burden to prove facts that justify a warrantless search. *See State v. Paul T.*, 1999-NMSC-037, ¶ 10, 128 N.M. 360, 993 P.2d 74.

{7}     "One of the settled exceptions to the warrant requirement is consent." *State v. Flores*, 2008-NMCA-074, ¶ 12, 144 N.M. 217, 185 P.3d 1067. "The voluntariness of a consent to search is initially a question of fact for the [district] court." *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. We apply a three-tiered test for determining whether consent is voluntary: (1) there must be clear and positive testimony that the consent was unequivocal and specific, (2) the consent was given without duress or coercion, and (3) the first two elements are viewed with a presumption against the waiver of constitutional rights. *Id.*

{8}     Here, Defendant contends that the State failed to establish that his consent was specific and unequivocal. Specifically, Defendant contends that the State failed to establish that he actually knew that he was consenting to a search of his residence.

4

"Evidence of oral consent can be established through testimony of the parties." *State v. Davis*, 2013-NMSC-028, ¶ 17, 304 P.3d 10. "The testimony must be clear and positive in order to show specific and unequivocal consent." *Id.* "The act of signing a consent to search form can also constitute specific and unequivocal consent." *Id.* ¶ 18.

{9} At the suppression hearing, Lieutenant Martinez and Sergeant Aguirre both testified that Defendant voluntarily gave his oral consent to the search. Both officers also testified that Defendant was presented with a Spanish-language consent form, which Defendant said he was able to read. Sergeant Aguirre testified that he asked Defendant if he understood the consent to search form and that Defendant confirmed that he did. Both officers saw Defendant sign the consent form. According to Lieutenant Martinez, Defendant did not have any questions about the consent form and he did not say anything after signing it. The State also presented an audio recording of the encounter in which Defendant gave his consent to search the residence. Defendant did not present any evidence to refute the voluntariness of the consent to search his residence.

{10} The district court concluded that Defendant gave valid, knowing, intelligent, and voluntary consent to search his residence and that the consent was not given under duress, intimidation, or coercion. We conclude that the district court's ruling was

supported by substantial evidence and that the court did not err in denying the motion to suppress the evidence seized from his residence.

**2.      Defendant's Motion to Suppress His Statements**

**a.      Defendant's Motion Was Untimely**

{11}      Three days before trial, Defendant moved to suppress statements he made to Lieutenant Martinez on the day his residence was searched. Defendant argues that the district court erred in denying the motion as untimely. We disagree.

{12}      Rule 5-212(C) NMRA requires that "[a] motion to suppress shall be filed no less than sixty . . . days prior to trial." The district court may waive the time requirement upon good cause shown. *Id.*; *see City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 28, 285 P.3d 637 (holding that "Rule 5-212(C) requires that motions to suppress be filed before trial and that the district courts must adjudicate suppression issues before trial, absent good cause"). "Examples of good cause may include, but are not limited to, failure of the prosecution to disclose evidence relevant to the motion to suppress to the defense prior to trial, failure of either party to provide discovery, or the discovery of allegedly suppressible evidence during the course of the trial." Rule 5-212 comm. cmt.

{13}      In this case, the district court heard Defendant's argument in support of his suppression motion on the morning of trial. The district court found that the motion

6

was untimely, noting that the defense had been aware of Defendant's statements to Lieutenant Martinez "for months, if not years." The court denied the motion on the basis that it was untimely and that Defendant had not shown good cause to hear it.

{14} On appeal Defendant contends that he "should have been allowed to present his motion, and that he would have prevailed on it." However, Defendant does not challenge the district court's findings concerning the timeliness of the motion or the absence of good cause. *See Maloof v. San Juan Cty. Valuation Protests Bd.*, 1992-NMCA-127, ¶ 19, 114 N.M. 755, 845 P.2d 849 (stating that the appellant is bound by the findings of fact made below unless the appellant properly attacks the findings, and remains bound if they fail to properly set forth all the evidence bearing upon the findings). Thus, Defendant has failed to show that the district court erred in denying the motion.

**b.      Ineffective Assistance of Counsel**

{15} Alternatively, Defendant asserts that he received ineffective assistance of counsel because his attorney did not move to suppress the statements sooner. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

{16} "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees . . . the right to the effective

7

assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, [appellate courts] evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citation omitted). "A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain the counsel's conduct." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted).

{**17**}     As to the first prong, "[d]efense counsel's performance is deficient if it falls below an objective standard of reasonableness[,]" usually judged as an action contrary to "that of a reasonably competent attorney." *Dylan J.*, 2009-NMCA-027, ¶ 37. Our review of counsel's performance is "highly deferential" in that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks and citation omitted). Therefore, a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

8

*State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). "If there is a plausible, rational strategy or tactic to explain counsel's conduct, a prima facie case for ineffective assistance is not made." *Dylan J.*, 2009-NMCA-027, ¶ 39.

{18}   As to the second prong, "[a] defense is prejudiced if, as a result of the deficient performance, there was a reasonable probability that . . . the result of the trial would have been different." *Id.* ¶ 38 (omission in original) (internal quotation marks and citation omitted). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). The deficient performance "must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Id.* (internal quotation marks and citation omitted).

{19}   To meet this first prong, Defendant must establish that the facts support suppression of the evidence and that "a reasonably competent attorney could not have decided that such a motion was unwarranted." *State v. Mosley*, 2014-NMCA-094, ¶ 20, 335 P.3d 244 (internal quotation marks and citation omitted). Defendant asserts that he would have prevailed on a motion to suppress his statements had the motion been timely made. Defendant claims that suppression was appropriate because he was in custody and had not yet been *Mirandized* when the statements were made.

{20}    *Miranda* warnings are required before law enforcement can conduct a custodial interrogation. *See State v. Munoz*, 1998-NMSC-048, ¶¶ 40-41, 126 N.M. 535, 972 P.2d 847. In determining whether a person is in custody while being interrogated, "the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 14, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted). The key inquiry under this objective test is "whether a reasonable person in the defendant's position would believe that he or she were not free to leave the scene." *Id.* ¶ 15 (alteration, internal quotation marks, and citation omitted).

{21}    Here, Defendant asserts that a reasonable person in Defendant's position would have felt a restraint of movement of the degree associated with a formal arrest. However, he does not cite any evidence in the record to support that contention. "[T]his Court's policy is to refrain from reviewing unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be[;]" thus, we decline to review this undeveloped argument any further. *State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 (internal quotation marks and citation omitted. We, therefore, conclude that Defendant has failed to establish a basis for his ineffective assistance of counsel claim. We note, however, that "[i]f facts beyond those in the record on

appeal could establish a legitimate claim of ineffective assistance of counsel, [the d]efendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues." *State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068.

**B.      The District Court Did Not Err in Granting the State's Motion to Reconsider the Dismissal of This Case**

{22}      Defendant filed his motion to dismiss on August 6, 2012, alleging that the State Police officers were avoiding subpoenas for re-interviews that had been authorized by the court, and that the State Police had a policy of refusing to accept subpoenas on behalf of the officers served by defense counsel. The State argued that Defendant had suffered little prejudice by his failure to re-interview the witnesses because they had already been extensively interviewed, and because the witnesses would have little or nothing to add to their testimony; however, the prosecutor promised to make the officers available before trial. The district court expressed its concern that the police were "manipulating the rules of criminal procedure, manipulating the constitutional rights [D]efendant has, and even worse, frankly manipulating the prosecutor's office." The district court dismissed the case explaining that "[D]efendant should not be forced by a police agency to choose which constitutional rights he's going to invoke."

{23}      The State filed a motion to reconsider the dismissal. The district court announced its intention to reconsider its ruling and set an evidentiary hearing on

Defendant's motion to dismiss for January 25, 2013. The district court judge subsequently recused himself.

{24} At the evidentiary hearing before the newly assigned district court judge, the State argued that the officers accused of avoiding the re-interview subpoenas had already been extensively interviewed by defense counsel, and that Defendant had failed to show that the proposed re-interviews involved any significant issue in the case. The district court concluded that the State Police had a policy designed to make it more difficult for defense counsel to serve officers with subpoenas. However, the court found that Defendant had made no showing of prejudice, granted the State's motion to reconsider, and reinstated the charges against Defendant.

{25} On appeal, Defendant argues that dismissal was appropriate since the State Police systematically obstructed criminal defendants from obtaining discovery, which "prejudiced [them] by forcing them to forgo their right to a speedy trial." We disagree.

{26} A district court has discretion to impose sanctions for the violation of the court's discovery orders if the violation results in prejudice to the opposing party. *See State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. However, "dismissal is an extreme sanction to be used only in exceptional cases." *State v. Bartlett*, 1990-NMCA-024, ¶ 5, 109 N.M. 679, 789 P.2d 627. "The [district] court . . . should seek to apply sanctions that affect the evidence at trial and the merits of the

case as little as possible." *Harper*, 2011-NMSC-044, ¶ 16 (omission in original) (internal quotation marks and citation omitted). The assessment of sanctions involves weighing the state's culpability against the amount of prejudice to the defense. *See id.* "[T]he relevant factors must weigh heavily in favor of [the] defendant to justify dismissal instead of some lesser sanction." *Bartlett*, 1990-NMCA-024, ¶ 5. "Dismissal is appropriate only if the defendant can show he will be deprived of a fair trial if he is tried without the missing evidence." *Id.*

{27} Here, Defendant's assertion that the conduct of the State Police prejudiced criminal defendants "by forcing them to forgo their right to a speedy trial" is insufficient to establish that he suffered prejudice as a result of the violation of the discovery order in this case. *See Harper*, 2011-NMSC-044, ¶ 16 ("[T]he mere showing of violation of a discovery order, without a showing of prejudice, is not grounds for sanctioning a party. Prejudice must be more than speculative; the party claiming prejudice must prove prejudice—it is not enough to simply assert prejudice." (citation omitted)). Thus, we cannot say that the district court abused its discretion in granting the State's motion to reconsider dismissal. Our conclusion that Defendant failed to establish that he suffered prejudice is not a commentary on the validity or invalidity of the State Police's policy.

**C.    There Was Sufficient Evidence to Prove the Substance Seized Was Cocaine**

13

{28}	Defendant contends that the evidence presented at trial was insufficient to prove that the substance seized from Defendant's residence was cocaine. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (internal quotation marks and citation omitted). In applying this test we first "draw every reasonable inference in favor of the jury's verdict." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. Then, we "evaluate whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *Id.*

{29}	In this case, the State presented the testimony of three State Police officers to show that the substance found in Defendant's residence was consistent with cocaine. Lieutenant Martinez testified concerning his qualifications and his experience in narcotics investigations. Lieutenant Martinez testified that during his seventeen-year law enforcement career, he received advanced training in narcotics investigation, worked on hundreds of narcotics cases, bought cocaine as an undercover officer approximately 80 times, and observed substances suspected to be cocaine more than 1,000 times. Based on his training and experience, the district court qualified Lieutenant Martinez as an expert in narcotics investigation.

14

{30} Lieutenant Martinez described cocaine as a white powdery substance. According to Lieutenant Martinez, cocaine is distinct from other white powders in that it has a unique odor and a unique "chunky" or "flaky" texture. Lieutenant Martinez also described how the location in which cocaine is stored and the manner in which it is packaged can distinguish it from other substances.

{31} Sergeants Aguirre and Matthew Martinez, who were also present during the search of Defendant's residence, testified that they received training in identifying narcotics and had worked on narcotics investigations. According to Sergeants Aguirre and Martinez, cocaine is a white, non-granulated powder that can be rocky, and is usually found in plastic bags.

{32} With regard to the substance found in Defendant's residence, Lieutenant Martinez testified that officers discovered two plastic bags containing a white powdery substance in Defendant's kitchen. Other evidence found in the residence included saran wrap, plastic baggies, aluminum foil, acetone, vitamin powder, and a digital scale covered with white powdery residue. According to Lieutenant Martinez, these items were thought to be used in the cleaning, cutting, storage, and packaging of cocaine. Officers also discovered large amounts of cash stashed in the bathroom and bedroom of the residence. Based on all of the items found in Defendant's

15

residence, Lieutenant Martinez concluded that the substance discovered in Defendant's kitchen was consistent with cocaine.

{33} New Mexico courts have held that circumstantial evidence is sufficient to establish the identity of narcotics or controlled substances. *See State v. Stampley*, 1999-NMSC-027, ¶ 42, 127 N.M. 426, 982 P.2d 477 (stating that "the [s]tate need not introduce scientific evidence to prove the identity of a controlled substance"); *State v. Rubio*, 1990-NMCA-090, ¶ 8, 110 N.M. 605, 798 P.2d 206 ("In deciding whether the evidence was sufficient to show the substance in this case was cocaine, we may consider such circumstances as the appearance and packaging of the substance, its price, the manner of its use, and its effect on the user."). This Court has also held that the testimony of law enforcement officers could be used to identify a controlled substance. *See State v. Gerald B.*, 2006-NMCA-022, ¶ 23, 139 N.M. 113, 129 P.3d 149 ("[The officer's] many years of experience in narcotics and drug investigations qualified him to give his opinion that the substance was marijuana."). Defendant concedes that scientific evidence is not necessary to prove the identity of a substance as long as there is sufficient lay testimony or circumstantial evidence. Defendant argues that there was no scientific testimony, only lay testimony of law enforcement officials, and there were no circumstances to establish the identity of the substance. We disagree.

16

**{34}** In this case, the State presented all three officers' testimony concerning the properties of cocaine in general, Lieutenant Martinez's testimony that the color, texture, odor, packaging, and storage of the substance found in Defendant's residence were consistent with cocaine, and Lieutenant Martinez's testimony that potential cutting agents, scales, packaging materials, and cash were also found in the home and were consistent with the presence of cocaine. Drawing all reasonable inferences from this evidence in favor of the verdict, as we must, we conclude that a reasonable jury could have determined beyond a reasonable doubt that the white powdery substance found in Defendant's kitchen was cocaine.

**D.      Defendant's Right to Speedy Trial Was Not Violated**

**{35}** "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387 (stating that "[t]he Sixth Amendment to the United States Constitution, [which is] applicable to the states through the Fourteenth Amendment," provides defendants with the right to a speedy trial). In *Garza*, our Supreme Court adopted the balancing test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972), which sets forth four factors to be considered when determining whether a defendant's right to a speedy trial was violated: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the

17

defendant." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted).

{36}    "In order to rule on a speedy trial motion[,] the district court must first make certain factual determinations and legal conclusions." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (internal quotation marks and citation omitted). "On appeal, [the appellate courts] give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Id.* (alterations, internal quotation marks, and citation omitted).

**1.    The Length of Delay**

{37}    "The first factor, the length of delay, has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121 (internal quotation marks omitted). The benchmarks for presumptively prejudicial delay differ according to the complexity of a case: "one

18

year for a simple case, 15 months for a case of intermediate complexity, and 18 months for a complex case." *Id.* Our Supreme Court has held that any delay "that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused." *Id.* ¶ 26. "A delay that scarcely crosses the bare minimum needed to trigger judicial examination of the claim is of little help to a defendant claiming a speedy trial violation." *Id.* (internal quotation marks and citation omitted). Whereas "an extraordinary delay . . . weighs heavily in favor of a defendant's speedy trial claim." *Id.*

{38}     In the present case, Defendant was arrested September 30, 2010, and his trial began on October 20, 2014. The State therefore failed to bring the case to trial for more than four years. This 48-month delay is presumptively prejudicial, regardless of the complexity of the case. *See id.* ¶¶ 21-23 (determining that a delay of more than four and one half years was "presumptively prejudicial irrespective of the case's complexity"). Because the delay is extraordinary, it weighs heavily against the State. *See id.* ¶ 26.

**2.     The Reasons for the Delay**

{39}     "Closely related to [the] length of delay is the reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "The reasons for a period of the delay may either heighten or temper

19

the prejudice to the defendant caused by the length of the delay." *State v. Maddox*, 2008-NMSC-062, ¶ 13, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. "*Barker* identified three types of delay, indicating that different weights should be assigned to different reasons for the delay." *State v. Spearman*, 2012-NMSC-023, ¶ 25, 283 P.3d 272 (internal quotation marks and citation omitted).

{40} "[A] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). Negligent or administrative delay "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* ¶ 26 (internal quotation marks and citation omitted). "[A]ppropriate delay[ that is] justified for a valid reason, such as a missing witness, is neutral and does not weigh against the [s]tate." *Serros*, 2016-NMSC-008, ¶ 29 (internal quotation marks and citation omitted).

{41} In the present case, the trial was continued a total of ten times, resulting in eleven different trial dates. Based on our review of the record, we conclude that during the eight-month period between Defendant's arrest and the first trial setting, the case

20

was moving toward trial with customary promptness. Accordingly, we weigh this eight-month period of time neutrally between the parties.

**{42}** Twice, defense counsel withdrew, causing a total delay of approximately ten months, which weighs against Defendant. Defense counsel filed a motion to continue due to a personal scheduling matter, which resulted in a one month delay. This delay also weighs against Defendant. Defendant's motion to dismiss related to a missing witness resulted in approximately six months delay. Because delay due to missing witnesses can be considered appropriate delay, "justified for a valid reason" this period of delay weighs neutrally. *Id.* (internal quotation marks and citation omitted).

**{43}** Twice the district court dismissed the case against Defendant: once as a result of misconduct of the State Police that resulted in the violation of discovery orders, and once on speedy trial grounds. The total time during which charges were not pending against Defendant as a result of the dismissals was approximately twenty-one months. This period is not included in the speedy trial analysis. *See State v. Parrish*, 2011-NMCA-033, ¶ 14, 149 N.M. 506, 252 P.3d 730 (holding that "the time during which no charges were pending against [the d]efendant while his case was on appeal shall be excluded when considering [the d]efendant's speedy trial claim"). The remaining two months of delay resulted from administrative delay and weigh neutrally.

{44} The State consistently made efforts to move the case forward and never asked for a continuance. There are no periods of delay that weigh against the State. We conclude that while the majority of the delay in this case is either excluded from the speedy trial analysis altogether, or weighs neutrally, approximately eleven months weigh against Defendant.

**3.     The Assertion of Defendant's Right**

{45} "Generally, [the appellate courts] assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, . . . weight [is accorded] to the 'frequency and force' of the defendant's objections to the delay. [The reviewing courts] also analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (citations omitted).

{46} Here, Defendant asserted his right to a speedy trial six times. Defense counsel filed four demands for a speedy trial, each accompanied by an entry of appearance. Two of the demands were accompanied by defense counsel's initial entry of appearance, which appears to have been filed twice. The third was filed approximately seven months after the criminal information when counsel withdrew then reentered his appearance. The fourth was made approximately two years and eight months after the criminal information was filed when counsel withdrew a second time and new counsel entered her appearance. Defendant also filed two speedy trial motions. The

22

first was filed approximately two years and eleven months into the case, and the second a few days before trial, which was approximately four years into the case.

{47} Although Defendant's four demands for a speedy trial were pro forma and made early on in the case, "they are still entitled to some weight." *Serros*, 2016-NMSC-008, ¶ 77; *State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103 ("New Mexico courts, however, have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the government[.]"). While the State argues that Defendant's speedy trial motions came late in the case, it concedes—and we agree—that these assertions still weigh in Defendant's favor. *See Garza*, 2009-NMSC-038, ¶ 32 (holding that the right to a speedy trial is so fundamental in nature that even the failure to assert does not constitute a waiver).

**4.    Prejudice**

{48} The right to a speedy trial is intended to guard against three forms of prejudice: oppressive pretrial incarceration, undue anxiety and concern of the accused, and impairment to the defense. *See Garza*, 2009-NMSC-038, ¶ 35. In order to establish a speedy trial violation, the defendant must demonstrate and provide evidence that the alleged prejudice resulted from the delay. *See Spearman*, 2012-NMSC-023, ¶ 39. "[S]ome degree of . . . anxiety is inherent for every defendant . . . awaiting trial." *Maddox*, 2008-NMSC-062, ¶ 33 (alteration, internal quotation marks, and citation

omitted). Thus, we weigh this factor in a defendant's favor *only* where there is a particularized showing of undue prejudice. *See Garza*, 2009-NMSC-038, ¶ 35.

**{49}** Here, Defendant was incarcerated for approximately four months after his arrest on September 30, 2010. The district court found that Defendant did not produce any evidence of undue anxiety or stress that resulted from pretrial incarceration, or as a result of the pretrial delay. Because some anxiety about any felony charge is inevitable, this factor weighs in the defendant's favor only where "the anxiety suffered is undue." *Id.*; *see Spearman*, 2012-NMSC-023, ¶ 39 (stating that the defendant must show "that the delay in trial beyond the presumptive period caused the alleged prejudice as opposed to the original indictment"). On appeal, Defendant neither challenges the district court's findings concerning prejudice, nor does he advance any other argument to support his claim of prejudice. Accordingly, we conclude that he has failed to show the type of prejudice that the speedy trial right was intended to prevent.

**CONCLUSION**

**{50}** For the foregoing reasons, we affirm.

**{51}** **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

24

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**