IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-044

Filing Date: November 22, 2011

Docket No. 32,388

STATE OF NEW MEXICO,

   Plaintiff-Petitioner,

v.

CURTIS HARPER,

   Defendant-Respondent.

Consolidated with:

Docket No. 32,402

STATE OF NEW MEXICO,

   Plaintiff-Respondent,

v.

CURTIS HARPER,

   Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Michael J. Kavanaugh, District Judge

Gary K. King, Attorney General
Jacqueline R. Medina, Assistant Attorney General
Santa Fe, NM

for State of New Mexico

Jacqueline L. Cooper, Acting Chief Public Defender
Carlos Ruiz De La Torre, Assistant Appellate Defender
Santa Fe, NM

1

for Curtis Harper

**OPINION**

**CHÁVEZ, Justice.**

**{1}** Defendant Curtis Harper was indicted on fifteen counts of criminal sexual penetration of a child under the age of thirteen. During a docket call in December 2006, the district court learned for the first time that not all witness interviews had been conducted, including those of the alleged victim and the doctor who examined her. The district court rescheduled the trial for February 19, 2007, and verbally instructed the attorneys to complete the witness interviews by January 19, 2007. During a subsequent hearing, because neither the victim nor the doctor were interviewed before the court-imposed deadline, the district court prohibited the State from calling either of them as witnesses. The State agreed with Harper that it could not make a prima facie case against him if these two witnesses were not allowed to testify.

**{2}** The State appealed the district court's exclusion of the two witnesses. The Court of Appeals unanimously reversed the district court regarding the victim, concluding that the State made efforts to comply with the district court's request and Harper was not prejudiced by the State's failure to make the victim available for an interview within the time frame established by the district court. Among other reasons, the Court of Appeals noted that this Court had granted Harper's Rule 5-604 NMRA petition for an extension of time to try the case until June 24, 2007. A majority of the Court of Appeals affirmed the exclusion of the doctor because, although Harper was not prejudiced, the State intentionally did not comply with the district court's deadline due to the doctor's demand for payment in advance of the interview. Because exclusion of witnesses requires an intentional violation of a court order, prejudice to the opposing party, and consideration of less severe sanctions, we affirm the Court of Appeals with respect to the victim and reverse with respect to the doctor. Therefore, we reverse the district court's order precluding the victim and the doctor from testifying at trial and remand for proceedings consistent with this Opinion.

**PROCEDURAL HISTORY**

**{3}** On November 22, 2004, Harper was indicted on fifteen counts of criminal sexual penetration of a child under the age of thirteen, a first-degree felony. After initially being represented by private defense counsel, Harper secured representation from the New Mexico Public Defender Department beginning in June 2005. Harper's attorney made his first request for witness interviews to the State on July 8, 2006.

**{4}** Five months later during a docket call, Harper's attorney advised the district court that the parties were not prepared to go to trial because, despite two attempts, not all of the witnesses had been interviewed. Harper's attorney acknowledged that the district court

2

would not entertain a motion to dismiss at that time. Harper's attorney therefore asked the court to set a date by which the witnesses were to be made available, and if the witnesses were not available or did not cooperate, then they could "take it from there."

**{5}** The State explained that one group of witnesses had been scheduled but had failed to appear, and stated that those witnesses would be rescheduled under subpoena. The two remaining witnesses included the victim, who was a minor, and Dr. Ornelas, who examined her. The State agreed to make the victim available, but indicated that her interview would be the last to be scheduled so that Harper could consider the pending offer of a plea agreement. The State explained that under a policy in the Second Judicial District Attorney's Office, a plea offer is withdrawn once a minor victim is interviewed. With respect to Dr. Ornelas, the State represented that there had been no attempt to set up the interview because the Public Defender Department had not yet authorized payment of Dr. Ornelas, and "we've got to get payment set up before that can be done."

**{6}** In response to an inquiry from the district court about the time left to try the case, the prosecutor stated that one month remained, but he intended to seek an extension of time for an additional six months. The district court then asked how much time was needed to complete the interviews. The prosecutor estimated that a couple of weeks would be needed to interview the first set of witnesses. With respect to the victim, the prosecutor believed she could be scheduled at any time, but cautioned that the plea offer would be withdrawn once that interview occurred. With respect to Dr. Ornelas, the prosecutor represented that "the doctor cannot be set up until payment is approved." Harper's attorney did not comment on any of the State's representations. Accordingly, the district court scheduled the trial for February 19, 2007. With respect to the interviews, the district court stated, with brief interruptions from counsel acknowledging what was being said:

> [W]hat I'd like to do is to try to give a deadline of the 19th of January for these interviews to be completed. . . . And that way if we're at that point and everything that can be done has been done, then you folks have a month to get the case actually ready to try. . . . Then if there's at least in the Defense's mind some continuing noncompliance, we'll—the Court will consider any motions that you have sometime [sic] after that and figure out if any remedy is necessary.

**{7}** An order regarding the witness interviews was never entered by the district court. It is not clear from the above pronouncement who had the responsibility to make the witnesses available. Despite the lack of clarity or any rule obligating the State to make witnesses available, it appears from the record that the State assumed that responsibility. It is also not clear who was to make arrangements to pay Dr. Ornelas, or if that arrangement was necessary at all. However, in a subsequent hearing, the State represented that other judges in the Second Judicial District Court have required the Public Defender Department to pay the doctor in this type of case. Overall, the lack of evidence and the vagueness of the commentary by both the attorneys and the district court make analysis of this case difficult.

**{8}** In any event, although some witnesses were interviewed under subpoena, the victim and Dr. Ornelas were not. The prosecutor scheduled the victim to be interviewed by Harper on January 19, 2007, and as recently as January 18 the victim had purportedly advised the prosecutor that she would attend the interview. However, she did not appear for her interview and apparently avoided a follow-up phone call from the prosecutor. The prosecutor never scheduled Dr. Ornelas for an interview because payment arrangements were not made. The State filed a motion to extend the time to produce witnesses, and Harper filed a motion to exclude the State's witnesses. Both motions were heard on March 29, 2007. Prior to the hearing, pursuant to Rule 5-604, the State secured an additional time extension from this Court to try the case, which was then set for trial on June 24, 2007.

**{9}** The district court ultimately excluded both the victim and Dr. Ornelas as witnesses, citing the following reasons: (1) the State failed to comply with an unambiguous deadline; (2) "witness[es cannot] hold hostage their testimony and their cooperation with discovery in a criminal case on simply a philosophy of no-pay-no-play"; (3) the State failed to produce any witnesses to testify in support of its allegations that the victim had been pressured by Harper's family not to cooperate with the prosecution; and (4) Harper was prejudiced because of "lack of discovery, lack of ability to prepare, lack of confrontation, incarceration . . . during all of this delay." The prosecution conceded that "as long [as] these two witnesses remain unable to testify, the State cannot go forward and put on a prima facie case."

**{10}** Following the district court's order excluding the two witnesses, the court lowered Harper's $200,000 cash-only bond to a $50,000 cash or surety bond with numerous conditions of release. Harper was released from state custody in late July 2007. The State appealed to the Court of Appeals.

**{11}** The Court of Appeals, in an Opinion authored by Judge Kennedy with Judge Robles concurring, reversed the district court's exclusion of the victim's testimony, and affirmed the district court's exclusion of Dr. Ornelas's testimony. Judge Bustamante concurred as to the victim and dissented as to Dr. Ornelas. *State v. Harper*, 2010-NMCA-055, ¶¶ 37-61, 148 N.M. 286, 235 P.3d 625 (Bustamante, J., specially concurring in part and dissenting in part). At the outset of its Opinion, the majority emphasized that it would not disturb the district court's rulings absent an abuse of discretion, but noted that exclusion of witnesses is improper absent a party's intentional refusal to comply with a court order and prejudice to the opposing party. *Id*. ¶¶ 11-12. Judge Bustamante agreed with this statement of the law. *Id*. ¶¶ 45, 48-49 (Bustamante, J., specially concurring in part and dissenting in part).

**{12}** Regarding the victim, the majority, with Judge Bustamante concurring, concluded that the State had made adequate efforts to make the victim available for an interview within the time frame set forth by the district court, and prejudice shown by Harper was insufficient. *Id*. ¶¶ 16, 51-52. With regard to the State's compliance, the Court of Appeals cited the State's scheduling of the interview with the victim, its willingness to reschedule the interview when the victim failed to attend, and Harper's ability to access the victim's

Safehouse interview. *Id.* ¶¶ 14, 16. The Court also concluded that Harper failed to establish more than speculative prejudice when the victim's possibly faded memory was the only prejudice offered. *Id.* ¶¶ 16, 47, 54. The Court of Appeals concluded that any "culpability" attributable to the State for the victim's eleventh-hour interview date was "mollifie[d]" by the State's efforts to secure the victim for an interview. *Id.* ¶ 14.

**{13}** With respect to Dr. Ornelas, the majority concluded that the State's refusal to schedule the doctor directly contravened the district court's order. *Id.* ¶¶ 17-18. The majority's conclusion was driven by its firm rejection of the State's claim that the State's recalcitrance was justified by its concerns regarding payment of Dr. Ornelas's witness fees. *Id.* ¶ 24. Indeed, the majority concluded that the State had failed to even preserve the issue regarding the fees, as it had not invoked a ruling before the district court. *Id.* ¶ 18. In reviewing the substance of the State's claim, the majority explained that the State could not exploit its control over witnesses to make demands for payment of witness fees in the face of an "unambiguous" district court order. *Id.* ¶¶ 20, 28. The majority also rejected the State's contention that it was Harper's obligation to subpoena Dr. Ornelas under Rule 5-503 NMRA, concluding that the State could not suddenly shed the responsibility it adopted for scheduling witness interviews, and that the district court obviated Harper's obligation to seek a subpoena for Dr. Ornelas. *Harper*, 2010-NMCA-055, ¶¶ 22, 30. Finally, the majority found that, despite the State's intransigence, Harper was not prejudiced by the State's failure to schedule the doctor for an interview. *Id.* ¶ 34. Despite this finding, and despite noting earlier in the Opinion the need for a showing of prejudice, the majority affirmed the district court's exclusion of Dr. Ornelas. *Id.* ¶ 35.

**{14}** In his dissent to the majority's affirmation of the exclusion of Dr. Ornelas, Judge Bustamante emphasized the lack of prejudice to Harper and cited both parties' culpability in failing to address the payment of fees to Dr. Ornelas. *Id.* ¶¶ 55, 61 (Bustamante, J., specially concurring in part and dissenting in part). We agree that Harper was not prejudiced by the failure to schedule the interviews of either the victim or Dr. Ornelas under the deadline established by the district court.

**{15}** Because the exclusion of a witness is improper absent an intentional refusal to comply with a court order, prejudice to the opposing party, and consideration of less severe sanctions, we affirm the Court of Appeals as to the victim and reverse as to Dr. Ornelas. Therefore, exclusion of the witnesses was an abuse of discretion.

**EXCLUSION OF WITNESSES AS A SANCTION REQUIRES AN INTENTIONAL VIOLATION OF A COURT ORDER, PREJUDICE TO THE OPPOSING PARTY, AND CONSIDERATION OF LESSER SANCTIONS.**

**{16}** A court has the discretion to impose sanctions for the violation of a discovery order that results in prejudice to the opposing party. *State v. Bartlett*, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct. App. 1990). A court abuses its discretion when its "ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Lopez*, 2011-NMSC-

5

035, ¶ 14, 150 N.M. 179, 258 P.3d 458 (internal quotation marks and citation omitted). The assessment of sanctions "depends . . . upon the extent of the Government's culpability . . . weighed against the amount of prejudice to the defense." *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981) (discussing non-disclosure of evidence (internal quotation marks and citation omitted)); *see generally* 5 Wayne R. LaFave, et al., *Criminal Procedure* § 20.6(b) (3d ed. 2010). Extreme sanctions such as dismissal are "to be used only in exceptional cases." *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. "The trial court . . . should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible." LaFave, § 20.6(b), at 500-01 (internal quotation marks and citation omitted). Under this rubric, the mere showing of violation of a discovery order, without a showing of prejudice, is not grounds for sanctioning a party. *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. Prejudice must be more than speculative; the party claiming prejudice must prove prejudice—it is not enough to simply assert prejudice. *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701.

**{17}** Our case law generally provides that the refusal to comply with a district court's discovery order only rises to the level of exclusion or dismissal where the State's conduct is especially culpable, such as where evidence is unilaterally withheld by the State in bad faith, or all access to the evidence is precluded by State intransigence. *See, e.g., State v. Ortiz*, 2009-NMCA-092, ¶ 37, 146 N.M. 873, 215 P.3d 811; *State v. Layne*, 2008-NMCA-103, ¶ 13, 144 N.M. 574, 189 P.3d 707. In *Ortiz*, the defendant who had been charged with driving while intoxicated (DWI) sought to prove that the stop of his vehicle was pretextual. 2009-NMCA-092, ¶ 3. The district court ordered the State to turn over a police officer's personal cell phone records that were "relevant" to the defendant's theory that the DWI stop was pretextual. *Id.* ¶¶ 12, 15. The State refused to comply with the order, even though the district court offered to allow the State to review the records in advance of production and to seek a protective order if the records were irrelevant or implicated confidentiality concerns. *Id.* ¶¶ 36-37. The State also rejected the court's offer to conduct an in-camera review of the records prior to production. *Id.* ¶¶ 20, 37. Concluding that "the actions of the State [were] in bad faith, arguably intentionally preventing the trial from going forward," *id.* ¶ 20 (internal quotation marks omitted), the district court dismissed the charges against the defendant, *id.* ¶ 21. On appeal, the Court of Appeals held that the "State's actions constituted conscious, intentional, and unjustifiable rejection of and refusal to comply with the district court's order." *Id.* ¶ 39. Accordingly, the Court of Appeals affirmed the district court's sanction of dismissal. *Id.* ¶¶ 33-34, 50. The Court of Appeals has taken a similar approach in cases involving the exclusion of witnesses. *Layne*, 2008-NMCA-103, ¶ 13 (finding exclusion of confidential informant proper where the State "intentionally chose not to comply with the [district court's discovery] order").

**{18}** By way of contrast, in instances where the State has not demonstrated bad faith, willful non-compliance, or flat-out disregard for a discovery order, our appellate courts have been reluctant to affirm the imposition of extreme sanctions. For example, in *Bartlett*, the district court ordered the State to produce a videotape of a police interview with the victim. 109 N.M. at 680, 789 P.2d at 628. Upon the State's failure to produce the tape, the district

court dismissed the case. *Id.* On appeal, the Court of Appeals noted that the district court had failed to establish any "deliberate misconduct or bad faith on the part of the state," *id.* at 681, 789 P.2d at 629, and that absent "indications of more culpable behavior," the rare sanction of dismissal was unwarranted, *id.* at 682, 789 P.2d at 630.

**{19}** However, even when a party has acted with a high degree of culpability, the severe sanctions of dismissal or the exclusion of key witnesses are only proper where the opposing party suffered tangible prejudice. *Compare Mathis v. State,* 112 N.M. 744, 748, 819 P.2d 1302, 1306 (1991) (affirming dismissal), *State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 (affirming dismissal), *and State v. Martinez*, 1998-NMCA-022, ¶ 12, 124 N.M. 721, 954 P.2d 1198 (affirming dismissal), *with Bartlett*, 109 N.M. at 680-81, 789 P.2d at 628-29 (holding dismissal was not warranted). The requirement that any serious sanction against the State be conditioned on a finding of prejudice is well established in our case law, is conceded by both parties in this case, and is recognized by both the majority opinion and the dissent filed by the Court of Appeals in these proceedings. *See Harper*, 2010-NMCA-055, ¶¶ 12, 49. "[T]he focus in determining prejudice is on whether the missing evidence is important and critical to the case." *Mathis*, 112 N.M. at 748, 819 P.2d at 1306; *see also* LaFave, § 20.6(b), at 495-96 ("In general, the concept of 'prejudice' in this context is limited to an adverse impact upon the defense's ability to prepare and present its case."). "[P]rejudice must be more than speculative." *McDaniel*, 2004-NMCA-022, ¶ 6.

**{20}** Therefore, when discovery has been produced late, prejudice does not accrue unless the evidence is material and the disclosure is so late that it undermines the defendant's preparation for trial. *See Martinez*, 1998-NMCA-022, ¶ 12 ("The focus in determining prejudice is whether the missing evidence is important and critical to the case." (internal quotation marks and citation omitted)). The potential for prejudice is manifest when, for example, material evidence is withheld altogether, *see, e.g.*, *Layne*, 2008-NMCA-103, ¶ 5, or where the State withholds evidence until the eleventh hour and then springs it on the defendant, *see, e.g.*, *Martinez*, 1998-NMCA-022, ¶¶ 11-12 (prejudice found when State introduced an amended witness list including a new witness the day before the trial was scheduled). However, when discovery is merely delayed in reaching the defendant, or the defendant has knowledge of the contents of the unproduced evidence, determination of prejudice is more elusive. *State v. McGee*, 95 N.M. 317, 319, 621 P.2d 1129, 1132 (Ct. App. 1980) ("The defendant was not prejudiced by the non-disclosure of [an audio] tape . . . [where d]efense counsel was already aware of the conversation."); *United States v. Ingraldi*, 793 F.2d 408, 411-12 (1st Cir. 1986) ("When the issue is one of delayed disclosure rather than of nondisclosure . . . the test is whether defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case.").

**EXCLUSION OF THE WITNESSES IN THIS CASE WAS AN ABUSE OF DISCRETION.**

**{21}** Here, the district court did not dismiss the State's case. However, exclusion of the

victim and the doctor who examined the victim deprived the State of making a prima facie case against Harper, which is the functional equivalent of a dismissal. The exclusion of witnesses is a severe sanction that raises questions about the fairness of the judicial process. *Patterson v. State*, 419 So. 2d 1120, 1122 (Fla. Dist. Ct. App. 1982). Therefore, like outright dismissal of a case, the exclusion of witnesses should not be imposed except in extreme cases, and only after an adequate hearing to determine the reasons for the violation and the prejudicial effect on the opposing party. *O'Brien v. State*, 454 So. 2d 675, 677 (Fla. Dist. Ct. App. 1984).

**{22}** The State's conduct in these proceedings was not characterized by the degree of culpability that gives rise to an exclusionary sanction. Unlike in *Ortiz* and *Layne*, here the State has neither acted in bad faith nor completely blocked access to evidence. Regarding the victim's interview, the State did schedule an interview, even though it did so at the eleventh hour. Although the State is not generally obligated to make witnesses available for an interview, we proceed with the premise that, because the State in this case assumed the responsibility of scheduling witness interviews, it had the obligation to follow through in good faith.

**{23}** It is undisputed that the State did schedule the victim for an interview and that the victim simply did not appear. The prosecutor represented to the district court that he met with the victim and her aunt in his office to arrange the interview, and the victim agreed to appear. The prosecutor also represented that his office confirmed the victim's appearance for her interview the day before it was scheduled. The State represented to the district court that the reason she did not appear was because of pressure put on her by Harper's daughter. The district court scolded the State for failing to bring witnesses to the hearing who could testify about the familial pressure brought to bear on the victim. The State suggested that it would subpoena the witness, but had not done so for the hearing because it thought it was "a legal motion." Although the State should have produced the witness at this hearing, the prosecutor's representations about the victim's anticipated cooperation were based on personal knowledge. This information from an officer of the court could only lead to the conclusion that the State did not intend to preclude Harper's attorney from interviewing the victim. In its motion, the State asked the district court for an extension of time to schedule the interview once the victim, who is a minor, was subpoenaed. This evidenced the State's efforts to comply with the district court's order.

**{24}** In addition, Harper was not prejudiced by the delay. The record reflects that Harper's attorney did not request the opportunity to interview witnesses until July 8, 2006. Harper had neither filed a motion to compel interviews nor issued subpoenas, nor did he contend during the docket call that interviewing the victim at that late date, or even on January 19, 2007, would somehow prejudice him. Harper's attorney had a copy of a previous Safehouse interview with the victim. More importantly, ample time remained on the Rule 5-604 extension to conduct interviews after the March 2007 exclusion hearing. By the time that hearing was held, the deadline for trial was not set to expire until June 24, 2007. At the December 2006 hearing, when the district court imposed the January 19 discovery

8

deadline, the district court noted that under the February trial date, the parties still had "a month to get the case actually ready to try." Faced with a request for even more time to conduct interviews in March, the district court abruptly excluded the State's two vital witnesses. In so doing, the district court made only a cursory finding of prejudice, merely enumerating "the subcategories of lack of discovery, lack of ability to prepare, lack of confrontation, [and] incarceration of the defendant during all of this delay." Given that we do not uphold exclusion without more than a finding of speculative prejudice and the extreme character of the exclusion sanction, the district court's finding of prejudice and the resulting exclusion of the victim constitutes an abuse of discretion.

**{25}** With respect to Dr. Ornelas, we do not agree that the State acted in bad faith or intentionally violated the district court's deadline. Unlike in *Ortiz* and *Layne*, here the State did not completely block access to evidence. Therefore, in this case, the prosecutor's actions were more akin to a negligent failure to comply than willful non-compliance. *See Bartlett*, 109 N.M. at 681, 789 P.2d at 629 ("Given the trial court's failure to explicitly find [bad faith or misconduct on the part of the State] . . . and the absence of any real indication that loss of the tape was deliberate, this fault weighs against the state only slightly more than negligent loss of evidence.").

**{26}** The issue for the State to address was whether the Public Defender Department would arrange to pay the doctor for her time during the interview. It is beyond cavil that an indigent defendant is entitled to reasonable and necessary expenses for his or her defense. *See State v. Brown*, 2006-NMSC-023, ¶ 31, 139 N.M. 466, 134 P.3d 753. The remaining questions to be resolved are (1) whether Dr. Ornelas was entitled to a fee in advance of her interview, if at all, and (2) whether the State or the Public Defender Department had to pay the fee. The record in this case does not allow us to provide a definitive answer. We agree with Judge Bustamante's observation that had the parties availed themselves of formal discovery methods, the issue "of fees for experts in these circumstances, including whether, when, and how they were to be paid" could have been appropriately addressed. *Harper*, 2010-NMCA-055, ¶ 58 (Bustamante, J., specially concurring in part and dissenting in part).

**{27}** In this case, the State did not absolutely refuse to comply with the district court's directive. The district court was on notice that the only reason Dr. Ornelas was not interviewed at the time of the docket call was because of a concern regarding her payment. Unlike the district court in *Ortiz*, 2009-NMCA-092, ¶ 36, here the district court made no efforts to work with the State to address its concerns. The payment issue was raised by the State during the docket call, and a decision as to whether, when, and how the fees were to be paid was not decided. Harper certainly did not protest the State's assertion that the Public Defender Department had to arrange for the payment. It would be pure speculation whether the parties had any discussions or disagreements regarding payment until the hearing that resulted in the exclusion of the two witnesses. If the district court believed that it had issued an unambiguous directive to the State to produce Dr. Ornelas for an interview, regardless of the compensation issue, the district court could have ordered the State to pay any fees as a sanction for not producing the doctor for an interview. This would have been a less severe

sanction than excluding the witnesses altogether. Instead, the district court simply indicated that what it would "like to do is to try to give a deadline of the 19th of January for these interviews to be completed," and "if there's at least in the Defense's mind some continuing noncompliance, we'll—the Court will consider any motions that you have sometime after that and figure out if any remedy is necessary." This declaration is hardly an unambiguous order for the State to produce the witnesses for an interview by a time certain, or suffer the exclusion of the witnesses from testifying at trial. Under the circumstances of this case, failure to impose a less severe sanction, together with the lack of any proof of prejudice to Harper or an intentional refusal to obey the district court's discovery directive, constituted an abuse of discretion.

**CONCLUSION**

**{28}** We reverse the district court's order precluding the victim and Dr. Ornelas from testifying at trial and remand for proceedings consistent with this Opinion.

**{29}  IT IS SO ORDERED.**

_____
    **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for _State v. Harper_, Docket Nos. 32,388 & 32,402**

**CA             CRIMINAL PROCEDURE**

CA-DD           Deposition & Discovery
CA-EX           Expert Witness
CA-PJ           Prejudice
CA-SA           Sanctions