IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number : _____

Filing Date: <u>August 31, 2017</u>

**NO. A-1-CA-35307**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**DAMON LEWIS,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

**OPINION**

**VARGAS, Judge.**

{1} The State asks us to reverse the district court's sanction of dismissal with prejudice of Defendant's shoplifting charges resulting from the State's failure to timely turn over recordings of witness identification interviews. Because the district court failed to explain the manner in which it considered culpability, prejudice, and lesser sanctions, as required by *State v. Harper*, 2011-NMSC-044, 150 N.M. 745, 266 P.3d 25, and clarified in *State v. Le Mier*, 2017-NMSC-017, 394 P.3d 959, we reverse the decision of the district court and remand the case for further consideration of the propriety of the sanction in light of these factors.

**I.     BACKGROUND**

{2} Defendant Damon Lewis, was indicted for shoplifting and conspiracy to commit shoplifting on June 25, 2014. The district court issued a scheduling order requiring that the parties complete all witness interviews by July 17, 2015, and file all pre-trial motions, excluding motions in limine, by July 28, 2015. The district court set the docket call for October 26, 2015, and trial on a trailing docket beginning November 2, 2015.

{3} Three months after the deadline to file pre-trial motions, Defendant filed a motion to dismiss the case or suppress the photo array identifications. In his motion,

Defendant asserted that the police failed to record the photo array identifications contrary to the police department's standard operating procedures, reasoning that because the State had not produced any recording during discovery as required by Rule 5-501 NMRA, it must have failed to collect and preserve that evidence.

{4}     On the first day of trial, the district court addressed Defendant's motion to dismiss, noting it was untimely. Defense counsel advised the court that, since filing his motion, the State had provided the recordings he presumed were lost, destroyed, or nonexistent. In response, the State pointed to a speed letter issued to Defendant, explaining that the recordings had been checked into evidence for as long as the case had been pending and were therefore available to Defendant. The State conceded that it had "definitely violated" the rule requiring it to provide copies of audio, video, and audio-video recordings made by law enforcement officers, *see* LR2-400.1(D) NMRA, but argued that the court had discretion under *Harper* to impose a lesser sanction than dismissal or suppression. *See* 2011-NMSC-044. Noting its obligation to impose sanctions, and after rejecting monetary sanctions as a remedy, the district court dismissed the case with prejudice, citing the State's continuing duty to disclose and its "blatant violation of the discovery rules." The State appealed.

## II.    DISCUSSION

{5}    We review the district court's imposition of sanctions for an abuse of discretion. *Le Mier*, 2017-NMSC-017, ¶ 22. To dismiss Defendant's case, the district court relied on LR2-400.1. The rule applies to cases filed in the Second Judicial District Court on or before June 30, 2014. The rules of criminal procedure and existing case law apply to these cases "only to the extent they do not conflict" with the special calendar rule. LR2-400.1(A), (B). The rule requires the parties to disclose "all discovery described in Rule 5-501(A)(1)-(6) NMRA" as well as the "phone numbers and e-mail addresses of all witnesses if available, copies of documentary evidence and audio, video, and audio-video recordings made by law enforcement officers[,]" and to provide "a 'speed letter' authorizing the defendant to examine physical evidence in the possession of the [s]tate." LR2-400.1(D). These disclosures must be made within ten days of the effective date of the rule, or no later than February 12, 2015, if not already disclosed. LR2-400.1(D). The parties are also subject to "a continuing duty to disclose additional information within five (5) days of receipt of such information." LR2-400.1(D)(2). Should either party fail to comply with the discovery requirements set forth in the rule, the district court "shall impose sanctions, which may include dismissal of the case with or without prejudice, prohibiting the party from calling a witness or introducing evidence, monetary

sanctions . . ., or any other sanction deemed appropriate by the court." LR2-400.1(D)(4). Further, where a party "fails to comply with any provision of the scheduling order, the court shall impose sanctions as the court determines is appropriate in the circumstances[.]" LR2-400.1(J)(4).

{6}    In *Harper*, our Supreme Court held that "exclusion of witnesses requires an intentional violation of a court order, prejudice to the opposing party, and consideration of less severe sanctions[.]" 2011-NMSC-044, ¶ 2. The *Harper* court pointed out that dismissal and witness exclusion are extreme sanctions, to be used only in exceptional cases. *Id.* ¶¶ 16, 21. Our Supreme Court later sought to "clarify the circumstances under which a court may permissibly exclude a witness as a discovery sanction." *Le Mier*, 2017-NMSC-017, ¶ 1. According to *Le Mier*, "*Harper* did not establish a rigid and mechanical analytic framework . . . so rigorous that courts may impose witness exclusion only in response to discovery violations that are egregious, blatant, and an affront to their authority." *Le Mier*, 2017-NMSC-017, ¶ 16. The Court further explained that a district court "must evaluate the considerations identified in *Harper*—culpability, prejudice, and lesser sanctions—when deciding whether to exclude a witness and must explain their decision to exclude or not exclude a witness within the framework articulated in *Harper*[.]" *Le Mier*, 2017-NMSC-017, ¶ 20. Despite this obligation, the district court continues to possess the

4

"broad discretionary authority to decide what sanction to impose when a discovery order is violated." *Id.* ¶ 22. Thus, according to *Le Mier*, "it is not the case that witness exclusion is justified only if all of the *Harper* considerations weigh in favor of exclusion." *Le Mier*, 2017-NMSC-017, ¶ 20. Instead, the district court may use suppression as a sanction for failure to comply with a discovery order "to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." *Id.* (internal quotation marks and citation omitted).

{7} Using this framework to guide its assessment of the district court's discretion in imposing sanctions, the *Le Mier* court then assessed the *Harper* factors. *Le Mier*, 2017-NMSC-017, ¶¶ 24-29. Looking first to the culpability factor, the Court noted that the facts of that case were particularly compelling, with the state flagrantly disregarding multiple extensions and warnings from the district court. Concluding that the state's conduct was sufficiently culpable to justify exclusion, the Court also noted that "a single violation of a discovery order may suffice to support a finding of culpability." *Id.* ¶ 24. The Court similarly found no abuse of discretion in the district court's prejudice determination, reasoning that "[w]hen a court orders a party to provide discovery within a given time frame, failure to comply with that order causes prejudice both to the opposing party and to the court."*Id.* ¶ 25. The prejudice to the defendant, according to the Court, was that his "day in court" had been needlessly

delayed and that he had been subjected to "the possibility of trial by surprise[.]" *Id.* The Court explained that the district court had been prejudiced by wasting its time and disrupting its docket to the detriment of other parties and the entire justice system. *Id.* ¶ 26. Finally, the Court concluded that the sanction imposed by the district court had been the least severe sanction available, noting that the district court "was not obligated to consider every conceivable lesser sanction before imposing witness exclusion." *Id.* ¶ 27. Instead, the district court satisfied its burden by "fashion[ing] the least severe sanction that best fit the situation and which accomplished the desired result." *Id.* The Court reasoned that the progressive sanctions imposed by the district court were evidence that the district court imposed the least severe sanction appropriate to the circumstances. *Id.* ¶ 28. The Court further condoned witness exclusion as a sanction in that case because it "ensured that the court's authority to efficiently administer the law and ensure compliance with its orders was vindicated." *Id.* ¶ 29.

{8}     Because the rules of criminal procedure and existing case law apply to this case "only to the extent they do not conflict" with the special calendar rule, LR2-400.1(A),(B), we must determine whether a conflict exists. While the language of the rule makes sanctions mandatory for violations of discovery obligations and scheduling order deadlines, it leaves the decision of the type of sanction to impose to

the discretion of the district court. The rule provides no guidance as to the considerations to be made when assessing sanctions. Our Supreme Court, however, has set out guidelines for assessing sanctions in *Harper* and *Le Mier*. *Le Mier*'s requirements that a court must both evaluate the considerations identified in *Harper* and explain its decision within the *Harper* framework in determining what type of sanction to impose, merely supplement the rule without conflicting with it. As no conflict exists between the rule and established precedent, we continue to rely on *Harper*'s use of culpability, prejudice, and lesser sanctions as appropriate tools for evaluating the type of sanction that the district court may impose. Further, though *Harper* and *Le Mier* address a district court's exclusion of a witness as a sanction, rather than the dismissal with prejudice employed in this case, both dismissal and witness exclusion constitute "extreme" sanctions. *See Harper*, 2011-NMSC-044, ¶¶ 16, 21. The considerations relevant to both sanctions are similar, and we conclude it is appropriate to apply the *Harper* and *Le Mier* considerations here.

{9}    The State concedes that it violated its initial disclosure obligations under LR2-400.1. The rule requires that "copies of documentary evidence and audio, video, and audio-video recordings" be provided within ten days of February 2, 2015, if not already disclosed. LR2-400.1(D). The State also had a "continuing duty to disclose additional information to [the defendant] within five (5) days of receipt of such

7

information." LR2-400.1(D)(2). Here, the recordings were not provided to Defendant until November 16 or 17, 2015, just a day or so before trial was to begin and well outside of any disclosure period provided for by the rule.

{10}    We disagree with the State's argument that providing the speed letter satisfied the requirements of LR2-400.1(D). The rule requires the parties to provide "copies of documentary evidence and audio, video, and audio-video recordings made by law enforcement officers or others, *and*, where necessary, a 'speed letter' authorizing the defendant to examine physical evidence in the possession of the State." LR2-400.1(D) (emphasis added). The requirements of LR2-400.1(D) were not satisfied by the provision of a speed letter because the language of the rule requires production of physical copies of documentary and audio-visual evidence in addition to a speed letter. *See id.* The State's failure to provide the recordings was a clear violation of the rule, regardless of whether Defendant was given a speed letter. The plain language of the rule indicates that a speed letter is not intended to serve as an alternative to the State's obligation to produce actual copies of the documentary and audio-visual evidence as required by the rule.

{11}    The State having violated its discovery obligations set forth in LR2-400.1(D), the district court was required to impose sanctions. Those sanctions are subject to the considerations enunciated in *Harper* and *Le Mier*. *Le Mier* makes it clear that, even

8

when the special calendar rule requires imposition of sanctions, the district court "must evaluate . . . culpability, prejudice, and lesser sanctions[,]" as enunciated in *Harper*. *Le Mier*, 2017-NMSC-017, ¶ 20. Upon weighing those factors, the district court then has discretion to decide which sanction to impose, but has an obligation to explain the reasons for its decision. *Id.*

{12} In this instance, the district court's assessment of the *Harper* factors is virtually nonexistent. *Le Mier* requires the district court to not only weigh the degree of culpability and extent of prejudice, but also explain its decision regarding applicability of lesser sanctions on the record. In this case, we do not have the benefit of looking at the sanction imposed through the lens of a thorough record that indicates a careful consideration of the *Harper* factors. Instead, we are left to determine whether the district court abused its discretion by arriving at the most extreme sanction available in response to an apparently unremarkable fact pattern. Though the district court was unquestionably aware of its obligation to consider the *Harper* factors, nothing in the record reveals the district court's reasons for imposing a sanction of dismissal with prejudice or the facts on which the district court based its decision. The limited record in this case is inadequate to determine whether the district court exercised due care in making its decision to impose a severe sanction contrary to *Le Mier's* specific requirement that a district court "*must explain* [its]

9

decision[.] 2017-NMSC-017, ¶ 20 (emphasis added). As such, the district court's imposition of its sanction—dismissal with prejudice—cannot presently be evaluated or justified by this Court, and we must reverse and remand the matter to the district court for further proceedings.

{13}    To illustrate the inadequacy of the record made in this case, we discuss the *Harper* factors—as modified by *Le Mier*—and the district court's assessment of each, beginning with culpability. *Le Mier* moves courts away from the *Harper* requirement that bad faith or intransigence exist prior to assessing sanctions against a party. *Harper*, 2011-NMSC-044, ¶ 17. In *Le Mier*, our Supreme Court emphasized the mandatory nature of a court's orders, stating that "[p]arties must obey discovery orders" and explaining that "[o]ur system of justice would be neither orderly nor efficient" if parties were not held to comply with those orders. 2017-NMSC-017, ¶ 24. Though *Le Mier* dealt with multiple violations, it acknowledged that "a single violation of a discovery order may suffice to support a finding of culpability[,]" acknowledging a rebuttable presumption of culpability when a discovery order is violated. *Id.* The degree of culpability, however, is a fact-specific inquiry for the district court to consider in assessing sanctions against a party. It is through this consideration of degree that bad faith or intransigence now factors into a district

court's calculation of appropriate sanctions. *See id.* ¶ 17. However, the district court made no such assessment here.

{14}     As to prejudice, *Le Mier* explains that "[w]hen a court orders a party to provide discovery within a given time frame, failure to comply with that order causes prejudice both to the opposing party and to the court." *Id.* ¶ 25. Thus, under *Le Mier*, every discovery order violation gives rise to some degree of prejudice. Unlike the circumstances in *Le Mier*, this case involved no additional extensions and hearings regarding discovery issues requiring the district court to resolve the issue or effect compliance with the discovery order. Instead, after the deadline for discovery and pre-trial motions had expired, Defendant filed a motion to dismiss the case or suppress the photo array identification when he realized, a few weeks before trial, that the State had not produced a video of the identification. Nowhere in the record, however, did the district court address prejudice.

{15}     Finally, we look at whether the district court considered lesser sanctions prior to dismissing the case with prejudice. *Le Mier* reminds us that "the district court was not obligated to consider every conceivable lesser sanction" before imposing dismissal with prejudice. *Id.* ¶ 27. It was only required to fashion the least severe sanction that it felt fit the situation and achieved the desired result. *Id.* The district court's consideration of lesser sanctions in this case was cursory at best. The district

court began by reciting the sanctions listed in the rule, "which may include dismissal of the case with or without prejudice, prohibiting the party from calling witnesses or introducing evidence, [and] monetary sanctions[.]" LR2-400.1(D)(4). The court noted that "monetary sanctions aren't doing anything" and, after reciting language from the rule regarding both parties' duty to disclose, dismissed the case with prejudice. There was no discussion of witness or evidence exclusion, which had been requested by Defendant in the alternative, nor was there any discussion of dismissal without prejudice. The district court made no other statements on the record explaining its reasons for choosing the extreme sanction imposed—dismissal with prejudice—over any other lesser sanction.

{16}     Despite the broad discretion *Le Mier* provides district courts when imposing sanctions, we remind our district courts that any decision to impose severe sanctions requires an adequately developed record that an appellate court can substantively review. While we may have expressed some concern with the severity of the sanction imposed in the present case—circumstances that appear much less egregious than the circumstances addressed in *Le Mier*—this does not preclude the possibility that the district court could have developed an adequate record finding the State culpable, perceiving sufficient prejudice to Defendant or the court, and determining that the discovery violation was sufficiently egregious to warrant a dismissal with prejudice

12

rather than the lesser sanction requested by Defendant. We are also fully aware of our duty to view the evidence and all inferences in the light most favorable to the district court's decision, *see Le Mier*, 2017-NMSC-017, ¶ 22, but without an adequate record explaining the district court's ruling and reasoning, we cannot properly perform our role as an appellate court. In this case, the district court simply failed to satisfy the requirement that it develop an adequate record and explain its reasons for imposing such a severe sanction over other available alternatives. We make no determination regarding whether dismissal with prejudice was the proper sanction in this case. We therefore reverse the district court's sanction of dismissal with prejudice and remand for further consideration in light of this opinion.

{17} Finally, the State also argues on appeal that the district court erred in considering and ruling on Defendant's untimely motion to dismiss. In making this argument, the State seeks a ruling that the district court cannot impose a sanction of dismissal for discovery violations once the motions deadline has passed. Nothing in the language of LR2-400.1 supports such an outcome. To read LR2-400.1 as the State urges, leads to an illogical result allowing the State to disregard the discovery requirements of LR2-400.1, turn things over outside the discovery deadline, argue Defendant cannot move for dismissal as a sanction because the motions deadline has run, and thereby avoid any repercussions for its discovery violations. *See State v.*

*House*, 2001-NMCA-011, ¶ 18, 130 N.M. 418, 25 P.3d 257 (recognizing that when arguments appear illogical to this Court they can be rejected on that basis). We do not read the rule to limit the district court in such a manner, particularly where the local rule contains no language to suggest such an illogical application and result would be appropriate.

**III.    CONCLUSION**

{18}    We reverse and remand based on the lack of stated support for the dismissal.

{19}    **IT IS SO ORDERED.**


**JULIE J. VARGAS, Judge**

**WE CONCUR:**


**MICHAEL E. VIGIL, Judge**


**TIMOTHY L. GARCIA, Judge**

14