This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                    NO. A-1-CA-34484

**MARIO ERNEST ORTIZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina T. Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**KIEHNE, Judge.**

{1}      The State appeals from the district court's order excluding all drug test results in a drug trafficking case as a sanction for the State's untimely production of those drug test results to Defendant Mario Ernest Ortiz. Because the district court did not determine whether the State's conduct prejudiced Defendant and because it should have considered less severe sanctions, we reverse and remand.

**BACKGROUND**

{2}      On May 15, 2014, a grand jury indicted Defendant for cocaine trafficking and conspiracy to commit cocaine trafficking, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006), and NMSA 1978, Section 30-28-2(A) (1979). He was released on bond on June 6, 2014. Defense counsel entered her appearance and requested discovery on June 23, 2014.

{3}      At a status conference on December 12, 2014, defense counsel asked the district court to dismiss the case based on the State's failure to provide discovery. Defense counsel stated that the State had so far provided only a copy of the complaint, but "no actual police reports." The district court, the State, and defense counsel agreed to give the State "a two-week deadline to come to full compliance" with its disclosure duties. Defense counsel also asked for another status conference in January 2015 "so we know where we're at with the case[.]" The district court agreed and orally set the status conference for January 13, 2015, to "find out if [the State is] in compliance or

not[,]" or whether other agencies will need to be ordered to provide reports. The parties did not discuss drug test results at this hearing.

{4} A few days after this hearing, the district court filed a "notice of jury trial" which stated that a hearing expected to last fifteen minutes was set for January 13, 2015. A few days after this notice was filed, the district court set a 15-minute status conference for January 28, 2015. Furthermore, the record shows that the purported jury trial had actually been set for January 12, 2015, not January 13.

{5} On January 5, 2015, the State filed a motion to continue the trial. The State explained that a status conference was supposed to be set on January 28, 2015. The motion also stated that "[t]he State is not prepared to go to trial. Drug results have yet to be received following a request that the drugs . . . be tested (submitted on December 16, 2014 . . . )." Defense counsel opposed the State's motion to continue the trial.

{6} On January 12, 2015, the parties appeared before a different judge of the district court than the judge who had presided over the December 12, 2014 status conference. Defendant opposed the State's motion for a continuance. Defense counsel stated that the State had not responded to her request to schedule witness interviews and that she had "not received the drug results in this case[.]" Defense counsel then orally moved "to suppress the drug results, since they have not been turned over, in violation of the

discovery rules." The State responded by pointing out that the trial date was set in error and that it did not yet have drug test results or the necessary witnesses prepared.

**{7}** The district court then said that this case was "not going to go forward." It said that "[t]hese drug results should have been looked for and asked for the minute [D]efendant was . . . arrested. To wait six months to do . . . drug testing, is way too late, and it's got to change." The district court then gave the State the option to voluntarily dismiss the case or it would "entertain a written motion by defense counsel for suppression of the drug results for failing to comply with discovery in a timely manner." The State responded that it would not dismiss the case. Defense counsel then stated that she would prepare the suppression motion that afternoon. The district court declared, "The drug results will be suppressed." There was no discussion at the hearing about any prejudice suffered by Defendant due to the State's discovery violations.

**{8}** Defense counsel filed the suppression motion later that day. Defendant sought "to exclude all drugs and drug results from the incident" that led to Defendant's indictment. The motion listed facts about the procedural history of the case, including the State's failure to timely produce witnesses and drug test results, and asserted that "[t]he circumstances of the [S]tate's noncompliance with discovery rules [h]as

4

prejudiced [D]efendant." The motion, however, did not explain how Defendant had been prejudiced.

**{9}** On January 21, 2015, the State filed a document explaining its view of the status of the case, saying that "[d]rug results were disclosed on January 20, 2015" and that the State was "ready for trial." Five days later, the district court filed an order granting Defendant's motion to exclude the drug test results. The order did not contain any findings of fact, conclusions of law, or any statements about prejudice to Defendant; it merely stated that "[a]ll drug results stemming from the investigation" were excluded.

**{10}** The State appeals, asserting, among other things, that the district court abused its discretion when it excluded the drug test results because Defendant did not demonstrate prejudice and the district court made no findings concerning prejudice. We agree.

**DISCUSSION**

**{11}** We review a district court's order suppressing evidence as a sanction for a disclosure violation for abuse of discretion. *See State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. "A court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

**{12}** As an initial matter, we note that the evidence in this case was excluded one week before enactment of the Second Judicial District Court's case management pilot program for criminal cases under LR2-400 NMRA (2014, recompiled and amended as LR2-308 NMRA, effective Dec. 31, 2016). Defendant's suppression motion relied on Rules 5-501, 5-503, and 5-505 NMRA. The district court's order does not rely on a rule or state a legal basis for its exclusion of the evidence. The State's brief in chief does not refer to any rule as the basis for its argument. But Defendant's answer brief acknowledges that the appeal should be "considered . . . [under the] requirements of Rule 5-501 and the local rules governing discovery in criminal matters, prior to the enactment of special local rules." We therefore resolve this appeal under the rules for disclosure violation sanctions that were in place before the enactment of LR2-308, but note that our conclusion would be no different if LR2-308 applied in this case. *See* LR2-308(A) ("The Rules of Criminal Procedure for the District Courts and existing case law on criminal procedure continue to apply to cases filed in the Second Judicial District Court, but only to the extent they do not conflict with this pilot rule."); *State v. Seigling*, 2017-NMCA-035, ¶ 23, 392 P.3d 226 (concluding that the principles stated in *Harper* continue to apply to LR2-308 sanctions that are the functional equivalent of dismissal).

{13} Rule 5-501(A)(4) requires the state to disclose to the defendant "any results . . . of scientific tests . . . within the possession, custody or control of the state[.]" Rule 5-501(H) provides that "[i]f the state fails to comply with any of the provisions of this rule, the court may enter an order pursuant to Rule 5-505 . . . or hold the prosecutor in contempt or take other disciplinary action pursuant to Rule 5-112 NMRA." Rule 5-505(A) imposes a continuing duty on the state to disclose material evidence. If the state fails to comply with its disclosure duties, "the court may . . . prohibit the [state] from . . . introducing in evidence the material not disclosed[.]" Rule 5-505(B).

{14} However, any serious sanction against the state, such as the exclusion of key evidence, must be conditioned on a finding that the defendant has suffered prejudice. *Harper*, 2011-NMSC-044, ¶ 19. In *Harper*, our Supreme Court held that exclusion of witnesses as a sanction for failure to comply with the disclosure rules "requires an intentional violation of a court order, prejudice to the opposing party, and consideration of less severe sanctions[.]" *Id.* ¶ 2. In reaching this conclusion, our Supreme Court recognized that exclusion of key witnesses in the case "deprived the [s]tate of making a prima facie case against [the defendant], which is the functional equivalent of a dismissal." *Id.* ¶ 21. Thus, "the exclusion of witnesses should not be

7

imposed except in extreme cases, and only after an adequate hearing to determine the reasons for the violation and the prejudicial effect on the opposing party." *Id.*

**{15}** As to the determination of prejudice, the party claiming prejudice has the burden to prove prejudice. *Id.* ¶ 16. "[I]t is not enough to simply assert prejudice." *Id.* "[W]hen discovery has been produced late, prejudice does not accrue unless the evidence is material and the disclosure is so late that it undermines the defendant's preparation for trial." *Id.* ¶ 20. And, "when . . . the defendant has knowledge of the contents of the unproduced evidence, determination of prejudice is more elusive." *Id.*

**{16}** In determining appropriate sanctions for Rule 5-501 disclosure violations, a district court "should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible." *Harper*, 2011-NMSC-044, ¶ 16 (internal quotation marks and citation omitted). For example, dismissal without prejudice may remedy the disclosure violation but would "not effectively bar the continuation of prosecution by the [s]tate." *Seigling*, 2017-NMCA-035, ¶ 23 (citing LR2-400(I) (2014) to suggest that dismissal without prejudice is an effective sanction, because where the case is refiled following dismissal without prejudice, dismissal *with* prejudice is the presumptive sanction for continued failure to comply with the rule).

**{17}** In this case, even if we were to assume that the State's seven-month delay in submitting the suspected cocaine to a laboratory for testing was "an intentional

8

violation of a court order"—the first prerequisite to severe sanctions under *Harper*, 2011-NMSC-044, ¶ 2—we conclude that the district court abused its discretion in excluding the cocaine evidence. First, the district court did not conduct "an adequate hearing to determine the reasons for the violation and the prejudicial effect on the opposing party." *Id.* ¶ 21. At the January 12, 2015 hearing, the district court admonished the State for waiting more than six months to submit the drugs for testing and determined that this case was "not going to go forward" without making any inquiries or findings about whether Defendant suffered the requisite prejudice. Second, Defendant did not meet his burden to prove prejudice. His suppression motion contained only a bare assertion that he was prejudiced, which is not enough. *See id.* ¶ 16. Third, the district court did not seek to apply a sanction "that affect[ed] the evidence at trial and the merits of the case as little as possible." *Id.* (internal quotation marks and citation omitted). It excluded the key evidence in the case, effectively depriving the State of its prima facie case against Defendant, which is the functional equivalent of dismissal. *See id.* ¶ 21 (concluding that exclusion of key witnesses was "the functional equivalent of a dismissal"). Although the district court gave the State the "option" to voluntarily dismiss its own case, which the State declined to do, the district court could still have dismissed the case without prejudice on its own accord. *See Seigling*, 2017-NMCA-035, ¶ 23 (suggesting that dismissal

without prejudice is an appropriate sanction because continued noncompliance with the rules after refiling will presumptively result in dismissal *with* prejudice).

**CONCLUSION**

{18}  We reverse the district court's order granting Defendant's motion to exclude drug test results and remand the case to the district court for further proceedings.

{19}  **IT IS SO ORDERED.**

_____

**EMIL J. KIEHNE, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**DANIEL J. GALLEGOS, Judge**