This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: March 21, 2019**

**STATE OF NEW MEXICO,**

　　Plaintiff-Appellee,

v.                                                            **NO. S-1-SC-36110**

**TRINIDAD GALLEGOS,**

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa Hadfield, District Judge**

Bennett J. Baur, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Appellant


Hector H. Balderas, Attorney General
Eran Shemuel Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**VIGIL, Justice.**

## I. INTRODUCTION

**{1}** In this direct appeal, Defendant Trinidad Gallegos appeals his convictions of first-degree murder and other crimes on the basis of independent and cumulative error at trial. In addition, Defendant asks us to conclude that he has made a *prima facie* showing he received ineffective assistance of counsel and to remand the matter for an evidentiary hearing. For the following reasons, we reject Defendant's claims of prejudicial error and conclude that he has not made a *prima facie* case of ineffective assistance of counsel. Accordingly, we affirm Defendant's convictions.

## II. BACKGROUND

**{2}** Defendant was sentenced for his convictions of first-degree murder, kidnapping, armed robbery, tampering with evidence, and conspiracy to commit kidnapping in the 2014 death of Sergio Bickham (Victim). The evidence presented at trial was that Defendant kidnapped Victim at a gas station in Albuquerque, and then drove Victim west of the city to a tunnel that runs under Interstate 40. There, Defendant shot Victim four times in the head, killing him.

**{3}** Charles Cordova testified against Defendant at trial. Before testifying, Cordova entered into an immunity use agreement with the State specifying that Cordova's

testimony could not be used against him at his own trial. Cordova testified that on the day of the killing, he helped Defendant tow Victim's vehicle, a black Mustang, in exchange for the forgiveness of a debt Cordova owed Defendant. He stated that Warren Esquirrel, an acquaintance of Defendant, followed Cordova and Defendant to the gas station. Cordova and Defendant then towed Victim's vehicle to a location where Esquirrel was supposed to pick it up.

{4} Cordova continued that after they towed the vehicle, he drove Defendant and Victim towards Route 66 Casino via Interstate 40. He testified that they did not make it to the casino. Instead, they exited the interstate at Atrisco Vista Boulevard and stopped at the underpass there. Defendant and Victim got out and walked through the underpass tunnel to the other side while Cordova stayed in his vehicle. Cordova stated that he heard at least one gunshot, and then Defendant returned with a gun in hand. When Cordova asked where Victim had gone, Defendant responded that "[h]e had some business to take care of." The pair then returned to Albuquerque without Victim.

{5} Though Cordova's testimony formed the backbone of the State's case against Defendant, additional evidence supported Cordova's retelling of the day in question. First, the State introduced expert testimony regarding cell phone location analysis from Agent Russell Romero. That testimony placed Defendant and Cordova in the

3

general locations of the kidnapping and murder.

{6}     Next, Esquirrel testified that when he met Defendant and Cordova at the gas station that afternoon, Defendant handed him a bag full of guns and ammunition, pointed a gun at him, and told him to leave "before the cops got there." Esquirrel further testified that Defendant asked Esquirrel if he knew someone who could remotely erase surveillance video. When Esquirrel replied that he was not sure if that was possible, Defendant told him he would "blow up the whole gas station."

{7}     In addition, Victim's half-brother, Joseph Michael Gomez, testified that two guys—one with a semiautomatic weapon—approached him and Victim as they were fixing Victim's Mustang at the gas station. Gomez stated that Defendant told him to put his hands on the trunk of the Mustang and then threatened to shoot him if he did not walk away. Gomez said he watched Cordova and Defendant push his brother to the passenger side of the car and then heard an electrical noise that he thought was a taser being used on Victim. After walking away from the car, Gomez saw Cordova and Defendant hook up the tow and leave with Victim still in the Mustang. Gomez described the scene as the State played corresponding surveillance camera footage from the gas station.

{8}     The video footage shows Defendant and Cordova meeting Victim where he is

4

parked at the gas pump. Once Defendant and Cordova arrive at the gas station, Victim remains inside the vehicle. Gomez is pushed towards the trunk of the car where he stays with his hands on the car until he walks away. Meanwhile, Defendant and Cordova continually enter and exit the driver's side of Victim's Mustang. Within minutes, the pair attach a tow rope from the Mustang to Cordova's SUV.

{9}     In the video, Esquirrel arrives to the gas station roughly two minutes after Defendant and Cordova. While Cordova is preparing the tow, Defendant walks back and forth between Esquirrel's truck and Victim's vehicle. Two minutes after he arrives, Esquirrel pulls out of the gas station and Defendant returns to Victim's vehicle. Cordova then gets into the passenger seat of the Mustang with Victim behind the wheel. Defendant climbs into the driver's seat of Cordova's SUV and drives away with Victim's Mustang in tow.

{10}    The jury convicted Defendant of first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(4) (2003); felony murder based on the predicate felony of kidnapping, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994); armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973); unlawful taking of a motor vehicle, contrary to NMSA 1978, Section 30-16D-1(A) (2009); tampering with evidence,

5

contrary to NMSA 1978, Section 30-22-5 (2003); and conspiracy to commit kidnapping, contrary to NMSA 1978, Section 30-28-2(A) (1979). The trial court properly vacated the convictions for felony murder and unlawful taking of a motor vehicle, *see State v. Garcia*, 2011-NMSC-003, ¶ 39, 149 N.M. 185, 246 P.3d 1057, and ultimately sentenced Defendant to life imprisonment plus nineteen years with a credit for pre- and post-sentence confinement. Defendant appeals his convictions pursuant to this Court's jurisdiction under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA.

## III.  DISCUSSION

{11}    Defendant's claims on appeal can be separated into three broad arguments. First, Defendant asserts he should be retried on the basis of several independent errors at his trial. Specifically, Defendant claims the trial court erred when it (1) failed to exclude certain evidence as hearsay, (2) erroneously excluded other evidence as hearsay, (3) failed to excuse three jurors for cause, (4) failed to exclude witness testimony despite the State's untimely disclosure of an immunity use agreement for that witness, and (5) erroneously denied two motions for mistrial based on admitted evidence of Defendant's prior bad acts. Second, Defendant asserts that his counsel was ineffective in (1) failing to object to testimony that violated his right of

confrontation and (2) failing to subpoena an expert in cellular location analysis. Finally, Defendant contends that cumulative error deprived him of a fair trial. Upon examination of the evidence presented and the applicable legal standards of review, we reject Defendant's arguments and affirm his convictions.

{12}    We review the trial court's decisions relating to Defendant's claims of independent error for abuse of discretion. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted). Ineffective assistance of counsel claims are reviewed de novo. *State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604.

**A.    Anonymous Tip Evidence**

{13}    One missing piece of evidence in the State's case was the murder weapon. At trial, Detective Mark Craver testified that another detective had received an anonymous tip that Defendant had placed the gun used in the killing in the air bag compartment of a black Chevy pickup truck at his residence. The tip alleged that Defendant was bragging after detectives failed to find the gun during their first search

7

of his residence. As we explain, the admission of this tip violated both the rule against hearsay and Defendant's rights under the Confrontation Clause. However, this error does not support Defendant's request for a new trial on appeal.

{14} As soon as Detective Craver mentioned the anonymous tip at trial, but before he explained what exactly the tipster told law enforcement, defense counsel objected on hearsay and relevance grounds. Importantly, defense counsel did not raise the Confrontation Clause in her objection. During the ensuing bench conference, the State responded that the tip was not being offered for the truth of the matter asserted but instead to show why the detective sought a warrant for the Chevy pickup. The State continued that another witness, Ernie Ortiz, would confirm that Defendant told him the gun was hidden in the air bag of the Chevy. However, later in the trial, Ortiz denied that Defendant had talked to him about the murder or the gun. Ultimately, the trial court permitted Detective Craver to testify to the content of the anonymous tip.

{15} Defendant argues on appeal that the State's only objective in eliciting the evidence of the anonymous tip was to offer the statement for its truth, *i.e.*, to show that Defendant hid the murder weapon. Essentially, Defendant claims that the State's stated purpose served merely as an end-run around the rule against hearsay. He argues he was prejudiced by the admission of the anonymous tip because it gave the

appearance to the jury that he craftily hid the murder weapon yet retrieved it before law enforcement could find it.

{16} In response, the State maintains that the tip was not hearsay because it was not offered for its truth but rather to explain why detectives sought a warrant to search the Chevy. Furthermore, the State contends that if the evidence was admitted in error, that error was harmless.

**1.     The anonymous tip was hearsay, but its admission was harmless**

{17} Hearsay is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. Hearsay evidence is inadmissible absent an exception. Rule 11-802 NMRA. "Statements offered for a purpose other than their truth are not hearsay." *Otto*, 2007-NMSC-012, ¶ 18. Crucially, that separate purpose must be "legitimate." *See id.* (listing such legitimate purposes as "establishing knowledge, belief, good faith, reasonableness, motive, [and] effect on the hearer or reader, [among] many others." (emphasis omitted) (quoting *State v. Rosales*, 2004-NMSC-022, ¶ 16, 136 N.M. 25, 94 P.3d 768). In the context of police investigations in particular, a statement "supporting the reasonableness of a detective's conduct may be admissible if relevant to a fact of consequence and not offered to prove the truth of the matter asserted." *State v.*

*Stampley*, 1999-NMSC-027, ¶ 39, 127 N.M. 426, 982 P.2d 477.

{18} Statements that would otherwise be considered hearsay may be admitted not for their truth, but to rebut suggestions that law enforcement acted unreasonably during the course of an investigation. *Id.* In *Stampley*, the defendant suggested that the investigating detective was biased and questioned the detective's motive for targeting him as a suspect. *Id.* On re-direct examination of the detective, the State adduced testimony that several out-of-court declarants had identified the defendant as the shooter. *Id.* ¶ 36. The Court held that the trial court did not err in admitting this testimony because it "explained [the detective's] state of mind at the time of the investigation and refuted [the defendant's] claim that she was biased against him." *Id.* ¶ 39.

{19} Unlike the defendant in *Stampley*, Defendant had not questioned any of the detectives' motives during the investigation. The State asked Detective Craver about the anonymous tip during direct examination, before defense counsel had any opportunity to cast doubt on his investigation. In particular, the defense never attacked the validity of the search warrant for the Chevy. Because the reasonableness of the detective's conduct in obtaining the additional search warrant had not been questioned, there does not appear to be a legitimate purpose for the admission of the

10

anonymous tip. Accordingly, the trial court's decision to allow Detective Craver to testify to the content of the anonymous tip violated the rule against hearsay, was "not justified by reason," and therefore constituted an abuse of discretion. *See Otto*, 2007-NMSC-012, ¶ 9.

{20} We pause here to emphasize that trial attorneys must articulate a *legitimate* purpose for offering evidence that would otherwise constitute inadmissible hearsay. *See id.* ¶ 18. Trial judges should be exceedingly cautious in permitting evidence of an out-of-court declarant's statements on the grounds that it is not being offered for the truth of the matter, as this response is often used to sidestep the hearsay exclusion rules.

{21} If evidence was improperly admitted over objection, we may grant a new trial only if "the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. "[A] non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *Id.* ¶ 36 (emphasis, internal quotation marks, and citation omitted). As opposed to the "reasonable *possibility*" standard used for constitutional errors, a "reasonable *probability* standard requires a greater degree of likelihood that a particular error affected a verdict." *Id.* (emphasis added) (internal quotation marks and citation omitted). To assess whether the error

affected the verdict, we evaluate the circumstances surrounding the error including: "the source of the error," the emphasis placed on the error, the importance of the erroneously admitted evidence to the case against the defendant, and whether the error was merely cumulative of properly admitted evidence or introduced new facts. *Id.* ¶ 43. We also consider the other evidence of defendant's guilt to "provide context for understanding how the error arose and what role it may have played in the trial," but overwhelming evidence of guilt cannot be the sole basis for a determination of harmless error. *Id.*

{22}     The admission of the anonymous tip was harmless error. Evaluating the circumstances surrounding the error, there was not a "reasonable probability" that the tip affected the verdict. First, the content of the anonymous tip was not highly emphasized at trial. Following Detective Craver's testimony, the State briefly discussed the Chevy with lead detective Russell Broyles. Detective Broyles testified that he searched the Chevy but was unable to find a firearm. A similar exchange was conducted with Detective Nicholas Marrujo. Detective Marrujo also testified that no gun was found in the vehicle. None of the detectives stated that they searched the vehicle based on the information provided by the tipster. Detective Broyles attempted to testify that Ernie Ortiz had alerted them that the gun was in the Chevy, but the trial

12

court properly sustained defense counsel's objection. Significantly, the State did not mention the anonymous tip, the black Chevy, or a gun hidden in the air bag in its closing argument to the jury.

{23}    In addition, it is more likely that the jury credited Cordova's testimony in reaching its guilty verdict on the murder charge. Cordova testified that moments after he heard at least one gunshot, Defendant returned from the underpass with a gun in hand and instructions for Cordova to return to Albuquerque without Victim. Based on the more complete picture painted by Cordova, it is not probable that the jury's decision was tainted by the assertion that Defendant apparently hid the gun and was pleased when law enforcement was unable to find it.

{24}    Arguably, the State benefitted from the jury's perception that the anonymous tip was credible enough for the detectives to obtain yet another warrant and expend resources based on its content. However, because the State did not heavily rely on the assertion within the anonymous tip and other evidence was likely more influential on the jury's verdict, the erroneous admission of the anonymous tip as nonhearsay was harmless error.

**2.      The violation of Defendant's confrontation rights was not fundamental error**

{25}    Defense counsel did not raise the Confrontation Clause in her objection to

13

Detective Craver's testimony regarding the anonymous tip. For this reason, the confrontation issue was not preserved for review. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Defendant did not explicitly ask us to review whether the admission of the anonymous tip violated Defendant's confrontation rights, though he does argue that his counsel's failure to object on confrontation grounds constituted ineffective assistance of counsel.

{26}    Before addressing this matter under the framework of ineffective assistance of counsel, we first address whether Defendant's confrontation rights were violated and whether that violation was fundamental error. *See State v. Jade G.*, 2007-NMSC-010, ¶ 24, 141 N.M. 284, 154 P.3d 659 (explaining that we may review issues that were not preserved at trial when necessary "to protect the fundamental rights of the party"); *see also State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (stating that when a Confrontation Clause issue is not preserved, we review for fundamental error). Under fundamental error review, we first determine whether an error occurred and then whether that error was fundamental. *Id.*

{27}    The Confrontation Clause of the Sixth Amendment of the United States Constitution bars the admission of statements by declarants who are not subject to

cross-examination by the defendant. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). To implicate the Confrontation Clause, the out-of-court statement must be "both testimonial and offered to prove the truth of the matter asserted." *State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435. A statement is testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the [police] interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Navarette*, 2013-NMSC-003, ¶ 8 (explaining that a statement is testimonial if it is "primarily intending to establish some fact with the understanding that the statement may be used in a criminal prosecution").

{28}    The anonymous tip was testimonial hearsay. First, as we conclude above, the tip was offered to prove the truth of the matter asserted in violation of the rule against hearsay. Second, the tip was testimonial in nature. There is no evidence in the record that the statements were given during the course of an ongoing emergency. Defendant correctly states that the tipster "undoubtedly imparted information for the primary purpose of assisting law enforcement in the prosecution of [Defendant]." Because the anonymous tip was testimonial hearsay of a declarant who did not testify, its admission at trial violated Defendant's right to confront the witnesses against him.

15

Despite this violation, the admission of the anonymous tip did not constitute fundamental error.

{29} "A fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied." *Cabezuela*, 2011-NMSC-041, ¶ 49 (internal quotation marks and citation omitted). "[A] defendant's conviction shocks the conscience [when] (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Astorga*, 2015-NMSC-007, ¶ 14, 343 P.3d 1245 (alteration, internal quotation marks, and citations omitted).

{30} Defendant's conviction does not shock the conscience because he is not indisputably innocent, nor does the admission of the anonymous tip constitute a mistake that would "undermine judicial integrity if left unchecked," *State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633.

On the charge of first-degree murder, the jury was instructed as follows:

> For you to find the defendant guilty of first-degree murder by deliberate killing as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime: One, the defendant killed Sergio Bickham; two, the killing was with the deliberate intention to take away the life of Sergio Bickham; three, this happened in New Mexico on or about the 10th day of May, 2014.

16

**{31}** There was substantial evidence independent of the anonymous tip upon which the jury likely relied in coming to its guilty verdict on this count. The most incriminating evidence against Defendant was Cordova's eyewitness testimony of the events immediately before and after the killing. That testimony demonstrated that Defendant shot Victim with deliberate intention to kill him in New Mexico on May 10, 2014 and was wholly independent of the anonymous tip regarding the hidden gun. Furthermore, Cordova's testimony was corroborated by Agent Romero's cell location testimony, which placed Defendant near the scene of the killing, and Esquirrel's testimony that Defendant wanted to get rid of the gas station's surveillance video even if it meant blowing up the building. The weight of this evidence leads us to conclude that Defendant was not indisputably innocent.

**{32}** Additionally, though the anonymous tip's admission was a mistake in the process, it does not rise to a level that shocks the conscience or demonstrates a miscarriage of justice. As the State did not rely on the anonymous tip when arguing Defendant's guilt to the jury, its erroneous admission does not undermine judicial integrity. In all, the admission of the anonymous tip violated Defendant's confrontation rights but was not fundamental error.

**B.     Ineffective Assistance of Counsel**

{33} Defendant contends that counsel's failure (1) to object to the anonymous tip on Confrontation Clause grounds and (2) to subpoena an expert witness to rebut Agent Romero's cellular location testimony amounted to ineffective assistance of counsel. "To establish [a *prima facie* case of] ineffective assistance of counsel, a defendant must show: (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.' " *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We have consistently stated that "we prefer . . . ineffective assistance of counsel claim[s] to be brought in a habeas corpus proceeding, 'so that the defendant may actually develop the record with respect to defense counsel's actions.' " *Astorga*, 2015-NMSC-007, ¶ 17 (quoting *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517). On direct appeal, if the defendant is able to present a *prima facie* case of ineffective assistance of counsel based on the facts in the record, we will remand the defendant's claims to the trial court for an evidentiary hearing. *See Astorga*, 2015-NMSC-007, ¶ 17*; see also State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (explaining that appellate courts evaluate the facts in the record to determine if defendants have met their burden). If the defendant cannot make a *prima facie* case based on the direct appeal record, we will presume counsel's performance was

reasonable. *Astorga*, 2015-NMSC-007, ¶ 17.

{34} Under the deficient performance prong of our ineffective assistance of counsel analysis, a "defendant must point to specific lapses . . . by trial counsel." *State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814 (omission in original) (internal quotation marks and citation omitted). Then, we determine whether counsel's conduct "fell below an objective standard of reasonableness." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (quoting *Strickland*, 466 U.S. at 688). In doing so, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Hunter*, 2006-NMSC-043, ¶ 13 (quoting *Strickland*, 466 U.S. at 689).

{35} Under the prejudice prong, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Trammell*, 2016-NMSC-030, ¶ 23, 387 P.3d 220 (alteration omitted) (quoting *Strickland*, 466 U.S. at 694). This is a high bar. The defendant must show that "counsel's errors were so serious, such a failure of the adversarial process, that such errors undermine judicial confidence in the accuracy and reliability of the outcome." *Astorga*, 2015-NMSC-007, ¶ 21 (alteration omitted) (quoting *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289).

19

{36} We need not analyze the first prong before considering the second. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *State v. Hernandez*, 1993-NMSC-007, ¶ 27, 115 N.M. 6, 846 P.2d 312 (internal quotation marks and citation omitted) (quoting *Strickland*, 466 U.S. at 697).

**1.    Defendant was not prejudiced by defense counsel's failure to object to the admission of the anonymous tip on Confrontation Clause grounds**

{37} As previously discussed, Detective Craver testified that detectives received an anonymous tip that Defendant was bragging when police had failed to find the murder weapon he hid in the steering wheel of a Chevy pickup. Defense counsel objected to this testimony on hearsay and relevance grounds but did not also raise the Confrontation Clause. Defendant argues he received ineffective assistance of counsel based on defense counsel's failure to include the Confrontation Clause in her objection, as well as her failure to seek a curative instruction to the jury not to consider the evidence of a hidden weapon. He states that a "reasonably competent lawyer would have objected on Confrontation Clause grounds, not just hearsay." The State responds that Defendant did not prove that the failure to object was incompetent and did not show how that incompetence led to prejudice.

{38} Looking to the second prong, Defendant was not prejudiced by defense

20

counsel's failure to object on confrontation grounds to the admission of the anonymous tip. As we have already concluded, there was not a "reasonable probability" that Defendant would not have been convicted, but for defense counsel's failure to raise the Confrontation Clause to bar evidence of the anonymous tip. Defendant failed to prove a *prima facie* case of ineffective assistance of counsel on this issue.

**2.     Defendant has not made a *prima facie* showing that failure to call an expert in cell location analysis was ineffective assistance of counsel**

{39}     The trial court qualified Agent Romero as an expert "Historic Cell Site Analyst" over Defendant's objection. Having reviewed the cell phone records of Defendant and Cordova, Agent Romero testified to each man's general location on the day in question. Agent Romero's testimony placed Defendant and Cordova near the locations of the kidnapping and murder at the time they were alleged to have occurred. Defense counsel cross-examined Agent Romero about his methods and analysis at trial. Defendant's own expert in historic cell site analysis, John Minor, did not appear for trial though it appears he had consulted with the defense. Defense counsel did not subpoena his presence, nor did she proffer to the trial court what Minor's testimony would be.

{40}     Defendant argues he was prejudiced when defense counsel failed to rebut Agent

21

Romero's testimony with testimony from the defense's own expert. The State contends that Defendant has not shown how Minor's testimony would have led to a different result at trial.

{41} "The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 47, 130 N.M. 198, 22 P.3d 666 (quoting *State v. Orosco*, 1991-NMCA-084, ¶ 35, 113 N.M. 789, 833 P.2d 1155). Especially when it comes to expert testimony, we are reluctant to second-guess trial counsel's decisions. *See Lytle*, 2001-NMSC-016, ¶ 47. ("Defense counsel may simply have concluded that a battle of experts would not be beneficial to the defense or that it would have unduly emphasized or inadvertently reinforced the State's evidence.").

{42} Defendant relies on *State v. Aragon*, 2009-NMCA-102, 147 N.M. 26, 216 P.3d 276, to support his argument that defense counsel's failure to subpoena Minor was unreasonable under the first prong of our ineffective assistance of counsel analysis. The defendant in *Aragon* was charged with child abuse based on multiple doctors' assessments of the cause of the child's injuries. *Id.* ¶¶ 3-6. For this reason, the Court noted that "expert testimony was the crux of [the] case." *Id.* ¶ 12. Because expert testimony was essential to both sides, the Court concluded that defense counsel had

22

acted unreasonably in failing to contact or retain "any sort of expert" to understand and rebut the State's evidence and "to prepare an adequate defense." *Id.* ¶ 15. The instant case is distinguishable from *Aragon* because cell site analysis was not the crux of the State's case against Defendant. Other evidence, namely Cordova's eyewitness testimony, placed Defendant at the scene of the homicide.

{43}	The record on direct appeal does not support a finding that defense counsel's decision not to subpoena Minor was professionally unreasonable. There could be several reasons defense counsel decided not to call Minor or any other expert in cell location technology. We will not speculate as to defense counsel's motives. A more developed record in a habeas corpus proceeding would allow for more comprehensive evaluation of defense counsel's performance. Accordingly, Defendant has not shown that defense counsel's failure to subpoena an expert in cell site analysis was deficient.

{44}	In addition, Defendant has not made a claim of prejudice on this issue. Defendant has not shown how Minor's testimony would have questioned or contradicted the testimony given by Agent Romero. Therefore, he has not met his burden to show that Minor's testimony would have led to a different result at trial. Absent such a showing of prejudice, Defendant has not made a *prima facie* case of ineffective assistance of counsel on this issue.

## C. Defendant's Remaining Claims of Independent Error

{45} Defendant argues that the trial court further erred when it (1) failed to excuse three jurors for cause, (2) excluded certain photographic evidence as hearsay; (3) failed to exclude Cordova's testimony despite the State's untimely disclosure of his immunity use agreement, and (4) failed to exclude evidence of Defendant's prior bad acts. We review these errors for abuse of discretion. *See State v. Gardner*, 2003-NMCA-107, ¶ 16, 134 N.M. 294, 76 P.3d 47 (explaining that challenges for cause are reviewed under an abuse of discretion standard); *Otto*, 2007-NMSC-012, ¶ 9 (explaining that evidentiary decisions are reviewed for abuse of discretion); *State v. Guerra*, 2012-NMSC-014, ¶ 23, 278 P.3d 1031 (explaining that review of a trial court's decision to admit evidence that did not comply with notice and disclosure requirements is for abuse of discretion); *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (reviewing ruling on admissibility of prior act evidence for abuse of discretion).

### 1. Failure to excuse jurors for cause

{46} Defendant argues that potential jurors 26, 42, and 48 should have been excused for cause based on their statements that they would prefer to hear from the defendant before deciding the case. Because the trial court denied defense counsel's request to

24

excuse those jurors, Defendant used three of his twelve peremptory strikes on those jurors. Ultimately, Defendant used all of his peremptory challenges before the trial court had finished the venire. Defendant asserts he was prejudiced by the trial court's failure to excuse potential jurors 26, 42, and 48 for cause, thereby forcing him to use his peremptory strikes on potential jurors who had demonstrated their partiality against him.

{47}     The United States and New Mexico Constitutions guarantee the right to a fair and impartial jury in a criminal trial. U.S. Const. amend. VI; N.M. Const. art. II, § 14. Defendant has the burden of proving a potential juror's partiality. *State v. Baca*, 1983-NMSC-049, ¶ 9, 99 N.M. 754, 664 P.2d 360. A potential juror is properly excused for cause when his views would "prevent or substantially impair the performance of his duties as a juror in accordance with his *instructions* and his oath." *State v. Sutphin*, 1988-NMSC-031, ¶ 14, 107 N.M. 126, 753 P.2d 1314 (emphasis added) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

{48}     During voir dire, defense counsel questioned the venire about the presumption of innocence and whether jurors would need to hear from both sides before reaching a verdict. When several members of the venire raised their hands in agreement that they would want to hear from the defense in the case, the court called a bench

25

conference to clarify that it would want to know which potential jurors would be unable to follow the court's instructions on the matter. Following the bench conference, defense counsel read aloud the jury instruction on the presumption of innocence and the State's burden of proof, and the court asked the venire to raise their hands if they would have trouble following the instruction. Three potential jurors raised their hands, and those three were eventually excused for cause. Potential jurors 26, 42, and 48 did not raise their hands after the jury instruction was read, though they had *previously* mentioned that they felt they should hear from both the State and Defendant before reaching a verdict.

{49}     Prejudice is presumed when a party must use its peremptory challenges on potential jurors who should have been excused for cause, so long as that party has exercised "all of his or her peremptory challenges before the court completes the venire." *Fuson v. State*, 1987-NMSC-034, ¶ 11, 105 N.M. 632, 735 P.2d 1138. In *Fuson*, the defendant was forced to use a peremptory challenge on a potential juror who should have been excused for cause because he said he could not be completely impartial as he knew many of the witnesses in the case. *Id.* ¶¶ 1, 3. The Court concluded that the defendant was harmed when potential jurors' names were called after he had used his last peremptory challenge. *Id.* ¶ 10. Therefore, the defendant's

26

"right of peremptory challenge was necessarily impaired by the trial court's failure to excuse the person for cause[.]" *Id.*

{50} Though Defendant used all of his peremptory challenges before the venire had been completed, he has not shown that potential jurors 26, 42, and 48 should have been excused for cause. Potential jurors 26, 42, and 48 did not raise their hands when the trial court asked to see who would not be able to follow the court's instructions and hold the State to its burden of proof. Though they had previously expressed concerns about not hearing from both sides of the case, there is no evidence in the record that their concerns survived proper instruction from the court. By not raising their hands, potential jurors 26, 42, and 48 indicated that their views would not impair their ability to perform their duties in accordance with the court's instructions. Moreover, even if the record is ambiguous regarding the ability of these potential jurors to remain impartial, there is no evidence of manifest error or clear abuse of discretion by the trial court in not excusing these jurors for cause. *See State v. Wiberg*, 1988-NMCA-022, ¶ 21, 107 N.M. 152, 754 P.2d 529.

**2.      Exclusion of photographs of Defendant's affidavit as hearsay**

{51} During the testimony of Detective Kevin Hallstrom, defense counsel sought to admit photographs of a form Defendant submitted to an insurance company claiming

that his cell phone was lost on May 9, 2014 (the day before the killing) and the response from the company requesting more documentation. The State objected to the exhibits as inadmissible hearsay being offered for the truth of the matter asserted in the documents photographed. Defense counsel made several arguments that the photographs fell into hearsay exceptions before ultimately arguing that the photographs were not being offered for their truth, but instead to show that the detective had knowledge that the phone had been reported lost or stolen. The trial court ruled that the photographs were being offered to prove the truth of the statements on the forms and were inadmissible hearsay.

{52}    Defendant continues to argue on appeal that the photographs of the insurance affidavit were not being offered for the truth of the matter asserted, and further claims that he was prejudiced by the exclusion of the photographs because he was not able to question the quality of the detective's investigation. The State responds that the photographs were improperly offered for their truth and that Defendant was not prejudiced because he was still able to question the detective about his investigation relating to whether the phone had been lost or stolen at the time of the killing. The State is correct.

{53}    As discussed previously in this decision, out-of-court statements offered for the

28

truth of the matter asserted are generally inadmissible hearsay. Rules 11-801, -802. The trial court correctly concluded that the photographs were being offered for their truth. Defense counsel aimed to discuss Defendant's assertions within the photographs with Detective Hallstrom, that is, that Defendant had claimed his phone was lost the day before the murder. It was not an abuse of discretion for the trial court to discredit defense counsel's stated purpose of admitting the photographs merely to show that the detective had knowledge that Defendant claimed the phone was missing the day before the murder.

{54} Additionally, Defendant was not prejudiced by the exclusion of this hearsay evidence. Defense counsel asked Detective Hallstrom if he investigated whether Defendant's cell phone had been lost or stolen. This shows that Defendant was able to question the completeness of law enforcement's investigation even without the photographs admitted into evidence.

{55} For these reasons, we conclude that the trial court properly excluded as hearsay the photographs of Defendant's affidavit.

**3.    Failure to exclude Cordova's testimony**

{56} During Cordova's testimony, defense counsel learned that Cordova had entered into an immunity use agreement with the State in exchange for his participation at

trial. Defense counsel argued at trial that Defendant was prejudiced by the State's failure to disclose the agreement before the trial. On appeal, Defendant contends that he was prejudiced by the late disclosure of the immunity use agreement because he was not able to adequately prepare for cross-examination of the State's key eyewitness.

**{57}** "Trial courts possess broad discretionary authority to decide what sanction to impose when a discovery order is violated." *State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959. When the State fails to comply with a discovery order, the trial court should fashion a sanction based on the "extent of the [State's] culpability . . . weighed against the amount of prejudice to the defense." *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25 (omission in original) (internal quotation marks and citation omitted). A trial court is justified in excluding a witness when "the State's conduct is especially culpable, such as where evidence is unilaterally withheld . . . in bad faith, or all access to the evidence is precluded by State intransigence." *Id.* ¶ 17. In imposing discovery sanctions, trial courts are advised to seek those sanctions "that affect the evidence at trial and the merits of the case as little as possible." *Id.* ¶ 16 (internal quotation marks and citation omitted). This is because "witness exclusion is a severe sanction and one that should be utilized as a sanction of last resort." *Le Mier*,

30

2017-NMSC-017, ¶ 21.

{58}     After learning that the State had not disclosed the immunity use agreement, the trial court allowed defense counsel to question Cordova without the jury present. During the interview, Cordova said he did not remember the details of the agreement he made with the state months prior but would have remembered if he had been asked closer in time to the finalization of the agreement. The trial court decided not to exclude Cordova's testimony, but sanctioned the State for its tardy disclosure of the immunity use agreement. The trial court fined the State $275 ($25 for every month that it failed to disclose the immunity use agreement to defense counsel).

{59}     The trial court's decision to allow Cordova's testimony and fine the State for its late disclosure was not an abuse of discretion. The State's failure to notify defense counsel of the immunity use agreement before trial does not rise to the level of culpability contemplated in *Harper*. The record does not demonstrate that the State "unilaterally withheld" notice of the agreement in "bad faith," nor did it preclude all access to the evidence. *See Harper*, 2011-NMSC-044, ¶ 17. The State explained that there was no intent to hide the agreement from defense counsel. Furthermore, Cordova was made available to the defense in pretrial interviews, which shows that the State did not preclude defense counsel from all access to Cordova's testimony.

31

**{60}** Defendant was not prejudiced by the State's late disclosure of the agreement because the trial court permitted defense counsel to question Cordova outside of the jury before she cross-examined him at trial. Additionally, defense counsel had access to all other evidence before trial, including Cordova's version of events. Therefore, the trial court's decision not to exclude Cordova's testimony and instead fine the State for its tardy disclosure of the immunity use agreement was within its broad discretion to impose appropriate discovery sanctions.

**4.      Denial of Defendant's motions for new trial**

**{61}** Defendant argues that the trial court should have declared a mistrial based on two pieces of admitted evidence of his prior bad acts. The first was Esquirrel's statement on the stand that he had bought drugs from Defendant. The second was Ortiz's testimony alluding to a four-hour standoff with police. We review the denial of a motion for new trial for abuse of discretion. *State v. Smith*, 2016-NMSC-007, ¶ 69, 367 P.3d 420. "The power to declare a mistrial should be exercised with the greatest caution. . . . An argument for mistrial must show that the error committed constituted legal error, and the error was so substantial as to require a new trial." *Id.* (alteration, internal quotation marks, and citation omitted).

**a.      Evidence that Defendant sold drugs to Esquirrel**

{62}     Prior to trial, the trial court issued an order instructing the State to "neutralize as much as possible the testimony regarding drug use by the decedent and/or the defendant" and forbidding the State from "elicit[ing] any specific drug names." This order was issued in accordance with Rule of Evidence 11-404 NMRA, which bars "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait," unless that evidence is being offered for another reason, such as to prove motive. Rule 11-404(A)-(B) NMRA. The State's theory of the case was that Defendant killed Victim over a drug debt. The order permitted evidence of Defendant's drug dealing to prove that motive.

{63}     At trial, defense counsel moved for a mistrial based on Esquirrel's testimony that he bought drugs from Defendant. The State argued that there was already evidence before the jury that Victim had owed a $600 drug debt to Defendant, so Esquirrel's testimony did not offend the pretrial order. The trial court denied the motion for new trial, in part because Esquirrel did not state that he bought *methamphetamine* from Defendant, so his testimony did not exceed the bounds of the pretrial order.

{64}     The trial court did not abuse its discretion in denying defense counsel's motion

33

for new trial based on Esquirrel's testimony. Esquirrel only briefly mentioned that he bought drugs from Defendant. Because the trial court had already ruled that evidence of Defendant's drug sales was permissible to prove motive under Rule 11-404(B), Esquirrel's testimony was not legal error. *See Smith*, 2016-NMSC-007, ¶ 69.

**b.      Evidence of a "standoff"**

{65}      During direct examination of Ortiz, the State asked if Ortiz remembered telling police about Defendant's statements regarding Victim's killing. When Ortiz continually stated that he did not recall what he said to police, the State asked if he would like to hear a recording of his conversation with law enforcement. Without having been asked a question, Ortiz blurted out, "If it's on recording, it's after four hours of getting high on the standoff, so I don't care." When the State asked again if he would like to hear the recording, Ortiz stated, "I don't want to hear it. I'm telling you right now, I was there for four hours during a standoff."

{66}      Defense counsel moved for a mistrial based on the mention of a "standoff," referring to the confrontation between police and Defendant at the time of his arrest. The trial court agreed that the mention of a standoff was improper but denied defense counsel's motion. The trial court explained that Ortiz did not get into "enough detail about what he means about a standoff [and h]e said nothing about the level to which

34

Mr. Gallegos may have been in a standoff." The trial court offered to immediately excuse Ortiz if defense counsel did not wish to cross-examine him, which defense counsel accepted.

**{67}** When inadmissible testimony comes in at trial, on appeal "we must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *State v. Gonzales*, 2000-NMSC-028, ¶ 39, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. Any error stemming from Ortiz's testimony was harmless. The State did not mention the standoff again and did not use Ortiz's statement in closing its case to the jury. As the trial court stated, it was not clear from Ortiz's testimony that Defendant was involved at all in the "standoff." For these reasons, it is not reasonably probable that the jury rested its verdict on Ortiz's reluctant testimony and brief, unexplained mention of a "standoff." Consequently, Defendant is not entitled to a new trial on these grounds.

**D.     Cumulative Error**

**{68}** Finally, Defendant argues he did not receive a fair trial on the basis of cumulative error. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that

the defendant was deprived of the constitutional right to a fair trial." *Guerra*, 2012-NMSC-014, ¶ 47 (internal quotation marks and citations omitted). This doctrine is "strictly applied and may not be successfully invoked if the record as a whole demonstrates that the defendant received a fair trial." *Id.* (internal quotation marks and citation omitted).

{69} We conclude above that the trial court indeed erred when it admitted the anonymous tip alleging that Defendant bragged that police had not found the hidden murder weapon. However, this error was harmless. Our study of the record and the applicable legal standards of review leads us to conclude that no additional errors were made at Defendant's trial. As a result, Defendant is not entitled to a new trial on the basis of cumulative error.

## IV. CONCLUSION

{70} We conclude that Defendant received a fair trial. We determine that the trial court's admission of the anonymous tip regarding the murder weapon was harmless error. Defendant's remaining claims of error are unpersuasive. Furthermore, Defendant has not made a *prima facie* case of ineffective assistance of counsel. We therefore affirm Defendant's convictions.

{71} **IT IS SO ORDERED.**

36

_____

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**PETRA JIMENEZ MAES, Justice, Retired**
**Sitting by designation**

_____

**CHARLES W. DANIELS, Justice, Retired**
**Sitting by designation**

37